IN THE MATTER OF FUTCH

Docket Nos. 74772, 74808. Submitted October 4, 1984, at Detroit.—
Decided November 29, 1984.

Five-year-old Marietta Jones died as a result of a brutal beating.
Her mother, Jeanetta Futch, and stepfather, Cleaven Futch,
were each convicted of manslaughter for the beating death and
sentenced to from 10 to 15 years in prison. The Department of
Social Services subsequently filed a petition in Wayne Probate
Court asking that the court take jurisdiction of the Futches'
other child, four-month-old Melanie Futch. The petition was
amended to request the court to assume permanent custody
and terminate the parental rights of Cleaven and Jeanetta
Futch. Following a hearing, the court, Thomas A. Maher, J.,
determined that Melanie Futch came within the court's juris-
diction and that the Futches' parental rights should be termi-
nated. An order terminating those rights was entered. Cleaven
and Jeanetta Futch filed separate appeals, which have been
consolidated. *Held:*

1. Jeanetta Futch's contention that the record does not
indicate that she waived her right to jury trial will not be
addressed since she failed to cite any authority requiring a
waiver of that right on the record.

2. Mrs. Futch's argument that hearsay testimony should not
have been admitted in the dispositional phase of the probate
court hearing is without merit. Hearsay evidence is admissible
in a dispositional hearing in juvenile court.

3. The probate court's assumption of jurisdiction over Mela-

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Appeal and Error §§ 691-701.
  See the annotations in the ALR3d/4th Quick Index under Appeal
  and Error.
[2] Am Jur 2d, Parent and Child § 5.
  Validity of state statute providing for termination of parental
  rights. 22 ALR4th 774.
[3-6] Am Jur 2d, Infants §§ 14-21, 33-41.
  Validity and construction of penal statute prohibiting child abuse. 1
  ALR4th 38.
  Physical abuse of child by parent as ground for termination of
  parent's right to child. 53 ALR3d 605.

nie Futch based upon the parents' mistreatment of Marietta Jones was proper. There is no requirement that neglect or abuse of a specific child must be shown as a prerequisite to jurisdiction over that child.

4. The court's decision to terminate the Futches' parental rights despite the willingness of the father's relatives to take care of the baby is not clearly erroneous and will not be overturned.

Affirmed.

1. APPEAL — PRESERVING QUESTION — SUPPORTING CITATIONS.

A statement of position without a supporting citation is insufficient to bring an issue before the Court of Appeals; a party may not leave it to the Court of Appeals to search for authority to sustain or reject his position.

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — EVIDENCE — HEARSAY — COURT RULES.

Admissibility of evidence in the dispositional phase of a hearing to terminate parental rights is limited only by the rules of evidence dealing with relevance and materiality; therefore, hearsay evidence is admissible in the dispositional phase (JCR 8.3).

3. INFANTS — PROBATE COURT — JURISDICTION.

The juvenile division of the probate court has jurisdiction over any child whose home or environment, by reason of neglect, cruelty, drunkenness, criminality or depravity on the part of a parent, is an unfit place for such child to live (MCL 712A.2[b][2]; MSA 27.3178[598.2][b][2]).

4. INFANTS — CUSTODY — EVIDENCE.

Evidence of how a parent treats one child is probative of how that parent may treat other children and is properly admissible in proceedings involving termination of parental rights over an allegedly neglected minor (MCL 712A.19; MSA 27.3178[598.19]).

5. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — PLACEMENT OF CHILD WITH RELATIVES.

Nothing directs a probate court to refrain from ordering termination of parental rights where a child could instead be placed with relatives, but the possibility of close relatives providing a home for the child should be considered by the court in such proceedings.

6. INFANTS — PROBATE COURT — DISPOSITIONAL ORDERS — BEST INTERESTS OF CHILD.

The best interests of the child are to be considered by the probate court in making a dispositional order.

*John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Thomas M. Chambers,* Assistant Prosecuting Attorney, for the Department of Social Services.

Juvenile Defender (by *Thomas M. Harp),* for Melanie Futch.

*Ina G. Zeemering,* for Cleaven Futch.

*Mary S. Trew,* for Jeanetta Futch.

Before: SHEPHERD, P.J., and WAHLS and J. W. FITZGERALD,* JJ.

PER CURIAM. Appellants' parental rights were terminated under MCL 712A.19a(d) and (e); MSA 27.3178(598.19a)(d) and (e). They now appeal as of right.

Appellants, Cleaven and Jeanetta Futch, were married in 1981. At the time of the marriage, Jeanetta had a small daughter, Marietta Jones. Jeanetta Futch gave birth to another daughter, Melanie, on February 28, 1982. In May of that year, Marietta Jones died as a result of a brutal beating. The Futches were each arrested, tried and convicted of manslaughter and sentenced to from 10 to 15 years for Marietta's death. The Department of Social Services then filed a petition, asking the court to take jurisdiction of baby Melanie. The petition was later amended to request the court to assume permanent custody and terminate the appellants' parental rights. After a two-day hearing on the matter, the judge determined that Melanie Futch came within the court's jurisdiction

---

* Retired Supreme Court justice, sitting on the Court of Appeals by assignment.

and that appellants' parental rights should be terminated.

Appellant mother first complains that the record does not indicate that she waived her right to jury trial. In her two-sentence argument on this issue, appellant cites no statute, court rule or case law requiring waiver on the record. A party may not leave it to this Court to search for authority to sustain or reject his position. *Butler v DAIIE,* 121 Mich App 727, 737; 329 NW2d 781 (1982). A statement of position without supporting citation is insufficient to bring an issue before this Court. *Id.*

Appellant mother next argues that hearsay testimony should not have been admitted in the dispositional phase of the hearing. JCR 8.3 provides that only "competent, relevant, and material" evidence is admissible in the adjudicative phase of a hearing, but that only "relevant and material" evidence is admissible in the dispositional phase. This Court recently determined that this difference meant that hearsay evidence is admissible in a juvenile court dispositional hearing. *In the Matter of Hinson,* 135 Mich App 472; 354 NW2d 794 (1984). Since the evidence at issue was submitted during the dispositional phase of the bifuracted hearing, appellant's argument is without merit.

Appellant mother also contends that, where there was no evidence to show that Melanie was neglected or abused, the parents' mistreatment of Melanie's sibling cannot be made the entire basis for the court's assumption of jurisdiction. The court has jurisdiction over any child whose home or environment, by reason of neglect, cruelty, drunkenness, criminality or depravity on the part of a parent, is an unfit place for such child to live. MCL 712A.2(b)(2); MSA 27.3178(598.2)(b)(2). A DSS protective services worker testified at the hearing

about her interview of the parents in jail a few days after Marietta's death. The father told her Marietta had been a very disorderly child, that she would spit out her food and mess up her clothes. He stated that a belt was no good for her, that she required further discipline. He told the social worker that he would whip Marietta with a doubled-over cord from his tape recorder and beat her with a curtain rod. He felt this was justified by a quote from the Bible—"Spare the rod and spoil the child." He said he was shocked to learn that he was being accused of killing his stepdaughter. He did not believe that he had caused Marietta's death, because it stated in the Bible that using the rod on the child would not kill her.

The DSS worker also interviewed appellant mother, who appeared somewhat dazed and confused. She told the worker that she had accidentally hit her daughter with a curtain rod, causing a hole in her shoulder. She admitted tying Marietta up, causing rope burns on her ankles.

The doctor who performed Marietta's autopsy testified at the hearing that she had died as a result of multiple injuries covering her entire body. The child was described as covered with bruises, with two teeth missing, one of which was lodged in her throat. She had what appeared to be nail scratches on her face and a number of loop-shaped bruises. The doctor testified that Marietta was a "battered child" because the injuries were in various stages of healing.

Based on the autopsy and DSS testimony concerning Marietta's treatment, the court found that Melanie came within its jurisdiction. We agree. A home in which a five-year-old girl is brutally beaten, scratched, and whipped until she dies is no place for a baby.

This Court has not required that neglect or

abuse of a specific child must be shown as a prerequisite to jurisdiction. Evidence that a parent mistreats one child is certainly probative of how that parent may treat other children. *In the Matter of LaFlure,* 48 Mich App 377, 392; 210 NW2d 482 (1973), *lv den* 390 Mich 814 (1973). The *LaFlure* Court upheld admission into evidence of the mother's treatment of one son although the hearing solely concerned her custody of another son. In *In re Dittrick Infant,* 80 Mich App 219, 222; 263 NW2d 37 (1977), this Court expressly rejected appellants' argument that the probate court could not find neglect or order a change of custody of a second child based on allegations that they had abused their first child. See also *In the Matter of Kathren Adrianson and Purcell Adrianson,* 105 Mich App 300, 314; 306 NW2d 487 (1981) (allegations of mistreatment of one child would be relevant in hearing concerning two other children).

Appellant father argues that the court should not have terminated parental rights because there were known qualified relatives willing and able to care for Melanie. The dispositional phase of the hearing focused on the suitability of the father's relatives as caretakers for the baby. One of the social workers had interviewed the father's parents, his brother and sister-in-law, and his sister. She testified that, although all of these relatives had clean, adequate homes, they all told her they had seen bruises on Marietta Jones in the past and had done nothing about it. They also all stated to her that beating children was necessary, basing their views on the Bible. Another social worker testified that she had spoken with the father's sister, who told her that she knew Marietta was being beaten and that she had tried to talk to the father about it, but had dropped the subject when he became upset. The sister told the social worker

that she had called the other relatives to let them know that Marietta was being beaten, because they had all suspected it. The social worker also testified that the father had told her that as a child he was beaten by his parents with switches, belts, extension cords and anything else they could put their hands on.

The father's parents both testified and denied knowing about the abuse of Marietta. Cleaven's mother testified that she had raised 12 children successfully and that she was now raising her 10-year-old granddaughter, whom she did not discipline physically. But she also stated that she felt the problem with kids today was lack of proper discipline and said her own parents used to strip her and her siblings, whip them, and made good children out of them. Cleaven's father admitted he had whipped Cleaven with a switch when he was young, but he stated that he did not believe the Lord intended children to be bruised or beaten.

The father's sister-in-law testified that she and her husband wanted to raise Melanie and would be willing to be seen by a psychiatrist if DSS felt it was necessary. She stated that she had whipped her sons with a belt occasionally when they were younger and felt that children learned respect for authority through fear.

None of the relatives testifying would condemn Cleaven and Jeanetta Futch for Marietta's death because they had not seen the beatings and felt they could not comment or judge. The judge stated that he had considered all the relatives, felt that the grandparents were too old, and concluded that all the relatives had gone through a denial process regarding Marietta's condition both before and after her death.

The possibility of close relatives providing a home for the child should be considered. MCL

712A.19; MSA 27.3178(598.19). The best interests of the child are also to be considered by the probate court in making dispositional orders. *In the Matter of Schejbal,* 131 Mich App 833, 836; 346 NW2d 597 (1984). Appellant is not arguing that he intended to place Melanie with his relatives so the court improperly assumed jurisdiction. *Cf., In the Matter of Curry,* 113 Mich App 821; 318 NW2d 567 (1982). He simply argues that his parental rights should not have been cut off since Melanie could have been placed with relatives. However, we have found nothing directing the court to refrain from ordering termination where the child could be placed with relatives. To the contrary, the statute expressly provides that termination may occur when the parent is convicted of a felony of a nature as to prove the unfitness of the parent to have future custody of the child. MCL 712A.19a(d); MSA 27.3178(598.19a)(d). The father points out that it is DSS policy to explore placement with relatives. In the instant case, this was done, both DSS workers testifying that they had concluded from their interviews of family members that the baby shoud be placed with nonrelatives. We cannot say that the court's decision to terminate appellants' parental rights despite the willingness of the father's relatives to take care of the baby was clearly erroneous. *In the Matter of Kenyatta Brown,* 139 Mich App 7; 360 NW2d 327 (1984).

Affirmed.