IN THE MATTER OF NYE

Docket No. 80591. Submitted May 16, 1985, at Detroit.—Decided September 16, 1985.

Petitioner, Department of Social Services, sought an order terminating the parental rights of respondent, Patricia Nye, to her two minor children, Iris and Michael Nye. Following several hearings in the Wayne County Probate Court, Juvenile Division, a dispositional hearing was held and the probate court, Thomas A. Maher, J., found that respondent was chronically schizophrenic and unable to provide a proper home for the children or to plan ·realistically for them in the foreseeable future. An order was entered terminating respondent's parental rights and committing the children to the Michigan Children's Institute for adoption planning. Respondent appeals therefrom. *Held:*

The probate court's findings are not clearly erroneous. The findings are supported by clear and convincing evidence. The order terminating respondent's parental rights was not clearly erroneous.

Affirmed.

N. J. KAUFMAN, J., dissented and noted his belief that a mental problem, by itself, is insufficient reason to terminate a mother's rights to her children, without a showing that her problem directly affects her ability to be a good mother. He noted that there was never any showing that respondent neglected the children or was in any other way unfit to be a mother. He would remand to the probate court to return the children to the respondent under the close supervision of the probate court.

REFERENCES FOR POINTS IN HEADNOTES

[1-3] Am Jur 2d, Parent and Child § 5.
   Validity of state statute providing for termination of parental rights. 22 ALR4th 774.
[3] Am Jur 2d, Infants § 16.
   See the annotations in the ALR3d/4th Quick Index under Infants.

OPINION OF THE COURT

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — PRO-
   BATE COURTS.

    The parental rights of a parent whose child is in the temporary
    custody of the probate court may be terminated if the court
    finds that the parent is unable to provide proper care and
    custody for a period in excess of two years because of a mental
    deficiency or mental illness, without a reasonable expectation
    that the parent will be able to assume care and custody of the
    child within a reasonable length of time considering the age of
    the child (MCL 712A.19a[c]; MSA 27.3178[598.19a][c]).

2. APPEAL — TERMINATION OF PARENTAL RIGHTS.

    An appellate court will not reverse an order of a probate court
    terminating parental rights unless the probate court's findings
    were clearly erroneous.

DISSENT BY N. J. KAUFMAN, J.

3. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — MEN-
   TAL HEALTH.

    *A mental problem, by itself, is an insufficient reason to terminate
    a mother's right to her children, without a showing that her
    problem directly affects her ability to be a good mother.*

*John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *Olga Agnello-Raspa,* Assistant Prosecuting Attorney, for Department of Social Services.

*Ina G. Zeemering,* for the minor children.

*Sobel, Giovanni, Colton & Shifman* (by *Michael W. Colton),* for Patricia Nye.

Before: M. J. KELLY, P.J., and MACKENZIE and N. J. KAUFMAN,* JJ.

MACKENZIE, J. Respondent, Patricia Nye, appeals as of right from an order of the Wayne County Probate Court terminating her parental

_____

* Retired Court of Appeals Judge, sitting on the Court of Appeals by assignment.

rights pursuant to MCL 712A.19a(c); MSA 27.3178(598.19a)(c).

Respondent is the mother of Iris Nye, born November 16, 1979, and Michael Nye, born December 29, 1980. Following her birth, Iris remained in respondent's care for approximately eight months until she was voluntarily taken to the police station. Iris was made a temporary ward of the court on November 7, 1980; shortly thereafter, Michael was born. He was removed from respondent's care immediately after birth and was made a temporary ward of the court on January 13, 1982. Both children have remained in foster care continously since they were removed from their mother. A permanent custody petition concerning both children was filed by the Department of Social Servies in December of 1982.

Dispositional hearings were held on the custody petition in January and February of 1984. At the conclusion of these hearings, the court ordered that the case remain open for six additional months and that overnight visits be instituted in respondent's home. The final dispositional hearing was held on August 21, 1984. In its decision dated September 4, 1984, the court found by clear and convincing evidence that respondent was chronically schizophrenic and unable to provide a proper home for the children or to plan realistically for them in the foreseeable future. Accordingly, respondent's parental rights were terminated on September 4, 1984, and the children were committed to the Michigan Children's Institute for adoption planning.

MCL 712A.19a(c); MSA 27.3178(598.19a)(c) provides that the parental rights of a parent or guardian whose child is in the temporary custody of the court may be terminated if the court finds that the parent is:

"unable to provide proper care and custody for a period in excess of 2 years because of a mental deficiency or mental illness, without a reasonable expectation that the parent will be able to assume care and custody of the child within a reasonable length of time considering the age of the child".

Respondent contends on appeal that there was an absence of clear and convincing evidence to show that she was unable to provide proper care for her children as she was never given a legitimate chance to do so.

On appeal, a reviewing court will not reverse an order terminating parental rights unless the trial court's findings are clearly erroneous. *In the Matter of Irving,* 134 Mich App 678; 352 NW2d 295 (1984); *In the Matter of Kenyatta Brown,* 139 Mich App 17, 20-21; 360 NW2d 327 (1984). We find that the trial court's findings are not clearly erroneous.

It is not disputed that respondent made efforts to regain custody of her children. The record shows that respondent willingly complied with every DSS suggestion and request and, on her own initiative, attended parenting classes. She regularly visited with the children after they were placed in foster homes, both at her own apartment and the DSS office. She demonstrated her love and concern for Iris and Michael.

Despite respondent's best-faith efforts and her repeated desire to establish a relationship with her children, the findings of the trial court that respondent is and would be unable to provide proper care and custody are supported by clear and convincing evidence.

Substantial and persuasive testimony by two psychiatrists was introduced in support of termination. Both doctors diagnosed respondent as suffering from chronic, undifferentiated schizophrenia.

Dr. Schornstein testified that there is no cure for respondent's illness. He further testified that respondent was unable to provide continuity of care and that the only way she could properly care for the children would be to have an "on-site surrogate parent". Dr. Schornstein also testified that no other types of counseling or treatment would benefit respondent.

Dr. Chan, respondent's treating psychiatrist, testified that respondent would be unable to maintain a "stable, personal or social adjustment" with the children and that the children were at an emotional risk from respondent's mental condition. He further testified that in 1983 he had hospitalized respondent three times for from three- to four-week intervals for depression, suicidal ideas and auditory hallucinations. Both doctors agreed that respondent's past history of hospitalization would be repeated in the future. Both doctors also concluded that respondent was and would remain unable to become a functional parent regardless of therapy or counseling. Respondent herself testified that she would require assistance in raising her children:

"*Q.* Do you believe that you can care for them?

"*A.* Yes, I do, but with some assistance.

"*Q.* Now, what kind of assistance do you think you would need?

"*A.* Possibly a housekeeper or even a close friend or a neighbor or relative, or whatever it would take.

* * *

"*Q.* You feel that you need some assistance in caring for your children?

"*A.* I'm sure I do."

Further testimony by two of respondent's case workers at DSS also supported termination. Both

testified that Michael and, at times, Iris, were reluctant to visit with respondent and that anticipation of the visits produced anxiety and negative emotions in the children.

Additionally, the trial court pointed out the uncleanliness of the home, the fact that Iris has speech problems and requires special care, and the effect on the children should respondent attempt suicide again in the future.

In light of the above evidence, we conclude that the trial court's order terminating respondent's parental rights was not clearly erroneous.

Affirmed.

M. J. Kelly, P.J., concurred.

N. J. Kaufman, J. *(dissenting).* I feel I must dissent in this case. This mother first came to the attention of the state, not because she was neglecting her child, but because she recognized she was temporarily unable to care for the baby. As far as I can tell, there was never any showing that she neglected the children or was in any other way unfit to be a mother. *Cf., In the Matter of Atkins,* 112 Mich App 528; 316 NW2d 477, *lv den* 413 Mich 912 (1982). I do not think that a mental problem, by itself, is sufficient reason to terminate a mother's rights to her children, without a showing that her problem directly affects her ability to be a good mother.

I assume that when the Legislature set up this procedure to put children in a foster home for two years, the reason was to give the parent a chance to learn or work on parenting skills. This mother did that. She cooperated with DSS right down the line, even arranging to take parenting classes on her own initiative when DSS was unable to set something up. If they were going to take the

children away on the basis of the mother's schizophrenia, they could just as well have terminated her rights at the beginning instead of waiting two years.

I also do not know for the life of me why Michael was taken from the mother in the first place. This is not a case where the older child was so neglected or abused that the state was justified in taking away the baby before it was harmed. *Cf., In re Dittrick Infant,* 80 Mich App 219, 222; 263 NW2d 37 (1977); *In the Matter of Futch,* 144 Mich App 163; 375 NW2d 375 (1984).

I would remand to the probate court to return the children to their mother under close supervision of the court.