## *In re* CAMPBELL

Docket No. 103511. Submitted May 19, 1988, at Detroit. Decided July 19, 1988.

A protective services worker petitioned the Oakland Probate Court to take jurisdiction of Barbara Horn and John Campbell's three children, C_____, V_____ and K_____. The court took jurisdiction upon the parents' pleas of no contest to the neglect petition and made certain orders regarding training and therapy for the parents. A dispositional hearing was set for six months following an order to monitor the parents' progress. The court, Barry M. Grant, J., subsequently entered an order terminating Horn's parental rights in the children, incorporating the findings of fact and conclusions of law in a separate opinion filed subsequently. Horn appealed.

The Court of Appeals *held:*

1. Horn did not preserve the issue of the propriety of the court's acceptance of her no contest plea since she failed to move to withdraw the plea.

2. Proceedings in juvenile court need not conform with all the requirements of a criminal trial but essential requirements of due process and fair treatment must be met. The procedure followed by the court in taking Horn's plea substantially complied with the court rule governing pleas in criminal cases.

3. The court's incorporation of subsequently filed findings of fact and conclusions of law into its termination order did not violate the court rule governing termination orders.

4. The postponement of the dispositional phase hearing for six months was for good cause and did not violate the court rules.

5. The court's determination to terminate Horn's parental rights because of neglect was not clearly erroneous.

Affirmed.

REFERENCES

Am Jur 2d, Criminal Law §§ 469 *et seq.*, 500 *et seq.*

Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children § 3.

Am Jur 2d, Parent and Child §§ 28, 29, 34, 35.

See the Index to Annotations under Children; Juvenile Courts and Delinquent Children; Termination of Parental Rights.

1. CRIMINAL LAW — GUILTY PLEAS — APPEAL — PRESERVING QUESTION — COURT RULES.

A defendant convicted on a plea of guilty may not raise on appeal the issue of any alleged failure of the trial court to inform him of rights he would be waiving by pleading guilty unless he has first moved to withdraw the plea in the trial court raising as a basis for withdrawal the claim sought to be raised on appeal (MCR 6.101[F][1]-[4], 6.101[F][7][a]).

2. CRIMINAL LAW — INFANTS — JUVENILE COURTS — DUE PROCESS.

Proceedings in juvenile court need not conform with all the requirements of a criminal trial but essential requirements of due process and fair treatment must be met.

3. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — FINDINGS OF FACT — COURT RULES.

An order terminating parental rights may not be entered unless the court makes findings of fact, states conclusions of law, and includes the statutory basis for the order (MCR 5.914).

4. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — DISPOSITIONAL HEARING — TIMELINESS — COURT RULES.

The court rules permit a dispositional hearing in a case to terminate parental rights to be held longer than twenty-eight days following the adjudicative hearing if for good cause (MCR 5.908[A][2][b]).

5. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — APPEAL.

Findings of fact which support termination of parental rights will not be reversed unless they are clearly erroneous; findings of fact are considered clearly erroneous, even if there is evidence to support them, when, on the basis of all the evidence, the reviewing court develops the definite and firm conviction that a mistake was made.

6. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — NEGLECT — CULPABILITY.

A finding of culpability or intent to neglect is not a legislative requirement for the termination of parental rights under the statute regarding permanent termination where the parent or guardian is unable to provide a fit home for the child by reason of neglect (MCL 712A.19a[e]; MSA 27.317[598.19a][e]).

*Baker & Chadwick* (by *C. Clifford Chadwick*), for the Campbell children.

*Lynn Rose,* for Barbara Horn.

Before: HOOD, P.J., and CYNAR and R. B. BURNS,* JJ.

CYNAR, J. Respondent, Barbara Horn, appeals as of right from a July 31, 1987, order terminating her parental rights to her three children, twins, V_____ and K_____, born November 13, 1983, and C_____, born July 15, 1978. We affirm.

A preliminary hearing was held on June 8, 1984, based on Madison Heights Protective Services Worker Jane Ishii's complaint. Following the hearing, V_____ and K_____ were placed in a foster home and C_____ was placed with her maternal grandmother, Virginia Franks. Ishii presented a formal petition to the court on June 18, 1984. The court ordered that the children remain in their prior placements. At the June 28, 1984, initial hearing, Horn and John Campbell (the natural father, who is not a party to this appeal) stood mute to the petition.

At the August 2, 1984, hearing, the probate court ordered that (1) V_____ and K_____ continue in foster care, (2) C_____ be temporarily released to Virginia Franks, (3) Horn and Campbell complete parent education classes, (4) Horn attend Al-Anon meetings, (5) Campbell attend Alcoholics Anonymous meetings, (6) Horn and Campbell receive counseling, and (7) any visitations by Horn and Campbell be supervised.

Subsequently, on June 11, 1986, Campbell pled no contest to the April 7, 1986, petition and the probate court terminated his parental rights. The April 7 petition was later amended. Horn pled no contest to the amended petition with the under-

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

standing that the contested disposition be adjourned for six months so that her progress could be monitored. The probate court questioned Horn and then accepted her no contest plea. Horn's attorney was satisfied that the court complied with MCR 6.101(F)(1)-(3). The matter was scheduled for review in six months in accordance with the parties' agreement.

On March 2, 1987, a contested dispositional hearing was held pursuant to recommendations that respondent's parental rights be terminated. Constance Sidor, the foster mother for K_____ and V_____, testified that respondent had not visited the twins since October 14, 1986. Nancy Rebar, a supervisor of Children's Services of Oakland County Family Services, recommended that respondent's parental rights in the twins be terminated because, in the past three years, she had not parented K_____ or V_____. Rebar's conversations with the twins' stepfather revealed that respondent had a "neglectful attitude" towards them, that respondent did not really want to parent them, she was attempting to regain custody of the twins so as to ultimately regain custody of C_____ and, in the stepfather's opinion, the twins would be better off if he and respondent did not have custody.

After Rebar's testimony, the hearing was adjourned until April 2, 1987, pending the completion of a psychiatric evaluation of respondent. The April 2, 1987, hearing was also adjourned because respondent was hospitalized in a psychiatric hospital in Radford, Virginia.

At the April 29, 1987, hearing, psychology expert Martha Wright testified that she was a therapist at Whaley's Children's Center which is a residential treatment facility for emotionally impaired children. C_____ was one of her

cases. When she first became involved with C_____, C_____ was suffering from an attention deficit disorder. She was extremely hyperactive, impulsive and had difficulty attending to any given situation. C_____ also showed symptoms of having been sexually abused. C_____ told Wright that, while living with her mother and grandmother, the mother would take baths with her and occasionally took C_____ to the bars. The mother frequently wore little or no clothing, dressed in front of C_____, cuddled under the blanket with her for long periods of time with little or no clothing, and asked C_____ to massage her legs. The grandmother also asked C_____ to sleep with her. Respondent has also physically abused C_____ by hitting her with a wooden spoon if she was inattentive to her mother's needs or misbehaved in school. C_____ was apparently sexually abused by a neighbor named Lou. Lou was eventually prosecuted for the molestation at respondent's insistence. However, Lou was in the home several times after respondent's mother first discovered the sexual abuse. C_____ felt angry and unprotected by her mother over the incidents with the neighbor. C_____ was also sexually provocative around male adults as well as male peers. She would get up in the night, turn on her bathroom light and show her body to a male child living across the hall and she attempted to touch the legs of the male staff at Whaley.

Wright recommended that respondent's parental rights be terminated as to C_____ because respondent would not be able to meet her needs based on respondent's history of lengthy psychiatric hospitalization and her need to be hospitalized. Respondent distorts what she is told and some-

times becomes easily enraged. She has minimal patience in dealing with C_____'s frustrating behaviors. C_____ looks forward to seeing her mother, but afterwards she becomes regressed. C_____ was not frightened of seeing her mother. She was afraid of returning to her mother's custody. During a visit with C_____, respondent became inappropriately tearful over the medication which C_____ was taking to help her function in school. Respondent also cried when C_____ reminded her that she might be adopted.

Ruth Szabo, a senior psychologist at the Oakland County Juvenile Court Psychological Clinic, conducted a psychological evaluation of C_____ on April 22, 1986. Szabo recommended permanent wardship because respondent did not obtain the parenting help which she needed and did not give the type of emotional support and structure that C_____ needed. During her interview with the child, C_____ indicated that she had several sexual experiences, including intercourse with the respondent's boyfriend. Respondent told C_____ not to tell anyone about these experiences.

Following this hearing, the probate court ordered that respondent undergo a psychological evaluation. At the next scheduled hearing, which took place on July 22, 1987, respondent did not appear nor had she contacted her attorney. After numerous attempts, her attorney was unable to contact her.

At this hearing, Charles Yelton, the children's caseworker, testified that respondent did not complete the parent education classes, did not consistently continue with therapy, was institutionalized

in psychiatric wards at least three times, did not comply with the requirement that she be in Al-Anon, and never submitted a custodial plan for the children. Respondent was convicted on a "bad check charge" and sentenced to probation with which she did not comply. Yelton recommended termination of respondent's parental rights because she is a damaged individual since her mother raised her "abnormally" and she was passing that treatment on to her children. Both respondent and her mother physically and sexually abused the children.

Following Yelton's testimony, the probate court summarized the testimony and stated that it would enter an order terminating respondent's parental rights. On July 31, 1987, the probate judge entered an order terminating respondent's parental rights. The order provided that it "incorporates the findings of fact and conclusions of law on a separate written statement to follow." On November 23, 1987, the court issued a twenty-three page opinion setting forth findings of fact and conclusions of law warranting termination. Respondent appealed.

First, respondent alleges that the probate court did not comply with certain requirements of MCR 6.101(F) before accepting respondent's no contest plea. Specifically, she claims that the court did not comply with MCR 6.101(F)(1)(c)(x) by not advising her that she had a right to testify, MCR 6.101(F)(2)(c)(iii) by not asking her if it was her own choice to plead, and MCR 6.101(F)(3)(b)(ii) by not conducting a hearing to establish support for her plea. Respondent did not move to withdraw her plea as required by MCR 6.101(F)(7). Nonetheless, she claims that MCR 6.101(F)(7) should not bar appellate review of this issue because her

appellate counsel was unaware of the alleged errors.[1]

A defendant may not raise the issue of alleged noncompliance with MCR 6.101(F)(1)-(4) unless the defendant has moved to withdraw the plea in the trial court. MCR 6.101(F)(7)(a); *People v Richardson,* 144 Mich App 616, 619; 376 NW2d 167 (1985). Respondent has not preserved the issue. However, even if we address her claims that the judge did not comply with MCR 6.101(F), we find no merit.

At the outset, we note that MCR 6.101 is a criminal procedural rule. Juvenile proceedings in probate court are not deemed criminal proceedings, MCL 712A.1; MSA 27.3178(598.1); *In re Stricklin,* 148 Mich 659, 666; 384 NW2d 833 (1986), lv den 425 Mich 856 (1986). Proceedings in juvenile court need not conform with all the requirements of a criminal proceeding, but essential requirements of due process and fair treatment must be met. *In re Gault,* 387 US 1, 30-31; 87 S Ct 1428; 18 L Ed 2d 527 (1967); *In re Belcher,* 143 Mich App 68, 71; 371 NW2d 474 (1985), lv den 424 Mich 863 (1985).

MCR 6.101(F)(1)(c)(x) states:

> Pleas of Guilty and Nolo Contendere. A defendant may plead guilty or nolo contendere only with the court's consent. Before accepting the plea, the court shall personally carry out subrules (F)(1)-(4).
>
> (1) An Understanding Plea. Speaking directly to the defendant, the court shall tell him or her:

*   *   *

---

[1] It should be noted that respondent is arguing the need for compliance with MCR 6.101(F) under the old juvenile court rules since the new rules provide for the procedures for acceptance of a no contest plea. The new court rule for acceptance of no contest pleas in termination cases is MCR 5.971. While the termination rule is similar to MCR 6.101(F), the termination rule does not contain the same requirements. We proceed to analyze the claim under the old rules.

(c) if the plea is accepted, the defendant will not have a trial of any kind, so he or she gives up the rights he or she would have at a trial, including the right:

*   *   *

(x) to testify at the trial if he or she wants to testify.

Our review of the plea-taking hearing reveals that the judge did not specifically tell respondent that, by giving up the right to trial, she was also giving up her right to testify at the trial. The court did twice advise respondent that she was giving up her right to a trial and the right to present witnesses. Thus, we believe that by advising her of these rights, she was implicitly informed that, by pleading no contest, she was relinquishing her right to testify at a trial. We believe that the court substantially complied with this requirement.

She also claims that she was not asked if it was her choice to plead guilty as required by MCR 6.101(F)(2)(c)(iii). However, we conclude that the court substantially satisfied this requirement by asking her if she wished to plead no contest and by asking her if anyone had made threats or promises to make her enter the plea.

Respondent also alleges a violation of MCR 6.101(F)(3)(ii) since the court did not conduct a hearing to establish support for a finding that she was guilty. The court did not hold a hearing. However, from our review of the hearing, it appears that the parties stipulated that the court could rely on the amended petition as a basis for the plea. The court found sufficient grounds to accept the plea after reviewing the record. Thus, we hold that the probate court substantially complied with MCR 6.101(F) and we see no basis for

remanding the case to the probate court to allow respondent to withdraw the plea.

Secondly, respondent claims that the court did not comply with MCR 5.914 when it entered the termination order before making findings of fact, conclusions of law, and providing the statutory basis for the order. This argument is wholly without merit.

Under the juvenile code, an order terminating parental rights may not be entered unless the court makes findings of fact, states conclusions of law, and includes the statutory basis for the order. MCR 5.914; *In re Draper,* 150 Mich App 789, 794-795; 389 NW2d 179 (1986).

Following the final hearing, the court stated that it would enter an order terminating respondent's parental rights. The order was entered on July 31, 1987, indicating that it was incorporating findings of fact and conclusions of law in a separate written opinion to follow. The opinion was issued on November 23, 1987, setting forth findings of fact, conclusions of law, and the statutory basis for the order. Respondent takes issue with the sequence in which this was done. She does not claim any prejudice resulted or that the opinion or order are defective. We see no error in the procedure that was followed.

Thirdly, she claims that the court did not comply with MCR 5.908(A)(2)(b). MCR 5.908(A)(2)(b)[2] provided:

> The interval between the adjudicative phase and the dispositional phase, if any, is within the court's discretion, but may not be more than 28 days after the adjudicative hearing without the parties' consent or without good cause, if the child is taken

[2] This particular rule is no longer a part of the revised juvenile court rules.

into custody and not released to a parent, guardian, relative, or other proper custodian.

Respondent pled no contest to the amended petition on June 11, 1986, with the understanding that the contested disposition be adjourned for about six months so that her progress could be monitored. The parties understood that, if she made substantial progress, the prosecutor might consider not pursuing the termination petition. Respondent consented to the six-month adjournment and the adjournment was for good cause. It was intended to give respondent the opportunity to improve as a parent. Therefore, we find no violation of MCR 5.908(A)(2)(b).

Finally, she alleges that the court clearly erred in terminating her parental rights on the basis of neglect. We disagree.

Respondent's rights were terminated pursuant to MCR 712A.19a(e); MSA 27.3178(598.19a)(e), which provides:

Where a child remains in foster care in the temporary custody of the court following the initial hearing provided by section 19, the court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:

\* \* \*

(e) The parent or guardian is unable to provide a fit home for the child by reason of neglect.

We review a decision to terminate parental rights under the clearly erroneous standard. *In re Cornet,* 422 Mich 274, 277; 373 NW2d 536 (1985); *In re Bedwell,* 160 Mich App 168, 172; 408 NW2d 65 (1987). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a

definite and firm conviction that a mistake has been committed. *In re Cornet, supra,* p 278, quoting *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976). The petitioner bears the burden of proving by clear and convincing evidence that termination of parental rights is warranted. *In re Bedwell, supra,* p 173.

Subsection (e) permits termination of parental rights on the basis of neglect. In *Fritts v Krugh,* 354 Mich 97, 114; 92 NW2d 604 (1958), our Supreme Court stated that the "entry of an order for permanent custody due to neglect must be based upon testimony of such a nature as to establish or seriously threaten neglect of the child for the long-run future." Respondent urges this Court to follow a recent group of appellate court cases which favor a showing of "culpable neglect" rather than "non-culpable neglect." See *In re Bailey,* 125 Mich App 522; 336 NW2d 499 (1983); *In re McDuel,* 142 Mich App 479; 369 NW2d 912 (1985); *In re Tedder,* 150 Mich App 688; 389 NW2d 149 (1986), lv den 426 Mich 874 (1986). In *Bailey,* the Court found that mentally retarded parents were not neglectful within the statute's meaning if the neglect arose solely from their limited mental abilities, since these limitations were insufficient to establish intent or culpability. 125 Mich App 527. *McDuel, supra,* stated that physical incapacity, multiple sclerosis and confinement to a wheelchair, could not be bases for statutory neglect since acts or omissions due to the incapacities were not blameworthy. 142 Mich App 486. *Tedder, supra,* held that a characterological disorder, paranoid schizophrenia, was insufficient to show statutory neglect since conduct arising from the disorder was not blameworthy. 150 Mich App 698-699.

The other line of appellate cases hold that culpability or blameworthiness is not required under

the statute. *In re Sterling,* 162 Mich App 328, 337-341; 412 NW2d 284 (1987); *In re Riffe,* 147 Mich App 658, 671-672; 382 NW2d 842 (1985), lv den 424 Mich 904 (1986); *In re Slis,* 144 Mich App 678, 688; 375 NW2d 788 (1985); and *In re Harmon,* 140 Mich App 479, 483; 364 NW2d 354 (1985).

The *Sterling* Court found that culpability is not required by the statute. The purpose behind the statute is to protect children from unfit homes. The *Sterling* Court reasoned that the Legislature did not intend for children to suffer long term damage merely because the neglect by the parents was not culpable. 162 Mich App 339-341.

We adopt the *Sterling* position on this issue. We agree that culpable neglect is not required under the statute.[3]

In applying the neglect standard, we agree with the probate court that respondent was neglectful of the children and her parental rights were properly terminated. The record evidence amply supports termination.

Affirmed.

---

[3] Although Judge CYNAR was on the *Bailey* panel, subsequent to the decision, Judge CYNAR has reversed his position and chooses to follow the *Sterling* analysis of this issue. Judge HOOD, who was on the *Tedder* panel, has similarly reversed his position and also chooses to follow the *Sterling* analysis of this issue.