*In re* SCHMELTZER

Docket Nos. 106724, 107339. Submitted December 14, 1988, at Grand Rapids. Decided March 3, 1989.

The Department of Social Services filed a petition with the Marquette County Probate Court alleging that respondents, Dale and Billie Jo Schmeltzer, were abusing and neglecting their minor daughter, Judith, and requesting the court to assume jurisdiction over the child. At a preliminary hearing, the court, Michael J. Anderegg, J., found probable cause to authorize the petition and ordered the appointment of counsel for respondents and the child. At an extended preliminary examination, respondents denied the petition's allegations and requested a jury trial for the adjudicative stage of the proceedings. Respondents then filed a motion to disqualify the judge for the reason that he had presided over an earlier case which resulted in the termination of their parental rights to their minor son, Aaron. The probate judge denied the motion. Respondents requested a de novo review of the decision but, before the review could be conducted, withdrew the motion. The DSS then filed a petition for termination of parental rights meant to place respondents on notice that, should the jury decide at the adjudicative hearing that the court has jurisdiction over Judith, the state would seek termination of their parental rights at the initial dispositional hearing. Following the adjudicative hearing, the jury found the petition's allegations to be true by a preponderance of the evidence and that such was sufficient to confer jurisdiction over Judith to the court. After a disposition hearing at which the same evidence as that presented at the adjudicative hearing was presented, including testimony of the social worker-therapist assigned to respondents' case, the probate court found that there was clear and convincing evidence to warrant the termination of respon-

REFERENCES

Am Jur 2d, Appeal and Error § 623.5; Judges §§ 180 et seq.; Parent and Child §§ 28, 29, 34.

Validity of state statute providing for termination of parental rights. 22 ALR4th 774.

Disqualification of judge for having decided different case against litigant. 21 ALR3d 1369.

dents' parental rights because of mental illness and abuse. Respondents appealed the order of termination to the Court of Appeals which, in an unpublished per curiam opinion, found error in the use of testimony of respondents' therapist and reversed the order of termination. An application for leave to appeal by the DSS was denied by the Supreme Court. 428 Mich 913 (1987). The DSS then filed a second petition for termination of parental rights. At a hearing at which all parties stipulated to the admission of evidence introduced in the termination proceedings regarding Aaron, the probate court considered all the testimony and evidence previously admitted in the case, except for the testimony of respondents' therapist, and additional testimony was taken. The probate court then issued an opinion and order finding that there was clear and convincing evidence to terminate respondents' parental rights in Judith on the grounds of mental illness, neglect and cruelty. The respondents brought separate appeals which were consolidated for consideration by the Court of Appeals.

The Court of Appeals *held:*

1. Respondent-father failed to prove that the probate judge was biased or prejudiced against him. Respondent-father's disqualification claim and an ineffective assistance of counsel claim related thereto were waived by failure to pursue them below.

2. The jurisdictional petition contained sufficient allegations of neglect.

3. The probate court properly considered the best interests of the child only after determining that a statutory ground for termination was proven by clear and convincing evidence.

4. A showing of culpable neglect is not required to terminate parental rights on the basis of neglect. There was clear and convincing evidence to establish neglect or the serious threat of neglect of Judith by both respondents in the long-run future. It was also in Judith's best interests to terminate respondents' parental rights.

Affirmed.

HOLBROOK, JR., J., concurred. While he does believe that a showing of culpable neglect is required to terminate parental rights on the basis of neglect, he would still affirm, since his review of the record leads him to conclude that respondents have been guilty of culpable neglect.

1. APPEAL — PRESERVING QUESTION.

A party waives a claim of ineffective assistance of counsel where his failure to raise the claim below by way of a motion for new

trial or an evidentiary hearing has precluded the development of a record sufficient for the Court of Appeals to reach and decide the issue.

2. JUDGES — DISQUALIFICATION OF JUDGES — BIAS.

The mere fact that a judge has previously conducted a proceeding involving the same party is not, by itself, a sufficient basis for requiring disqualification of the judge.

3. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — BEST INTERESTS OF CHILD.

After a statutory ground for termination of parental rights is established by clear and convincing evidence, the court may consider the best interests of the child.

4. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — APPEAL.

A probate court order terminating parental rights is reviewed under the clearly erroneous standard.

5. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — NEGLECT.

An order terminating parental rights based on neglect must be based on evidence of such a nature as to establish neglect, or the serious threat of neglect, of the child for the long-run future; a showing of culpable neglect is not required to terminate parental rights on the basis of neglect (MCL 712A.19a[e]; MSA 27.3178[598.19a][e]).

*Gary L. Walker,* Prosecuting Attorney, and *Scott K. Hanson,* Assistant Prosecuting Attorney, for the Department of Social Services.

*Osstyn, Bays & Ferns* (by *William B. Ferns*), Guardian ad Litem, for Judith Schmeltzer.

*Steward, Peterson, Sheridan & Nancarrow* (by *Paul A. Peterson*), for Dale Schmeltzer.

*Kendricks, Bordeau, Adamini, Keefe, Smith & Girard, P.C.* (by *Karen L. Alholm*), for Billie Jo Schmeltzer.

Before: MAHER, P.J., and HOLBROOK, JR. and
R. E. NOBLE,* JJ.

PER CURIAM. On January 5, 1988, the Marquette
County Probate Court entered an opinion and
order terminating both respondents' parental
rights in their minor daughter, Judith, born September
22, 1985, on the bases of mental illness,
neglect, and cruelty. MCL 712A.19a(c) and (e) and
712A.20; MSA 27.3178(598.19a)(c) and (e) and
27.3178(598.20). From that order of termination,
respondents filed separate appeals which were
consolidated for consideration by this Court. We
affirm.

I

The state's involvement in this case began on or
about January 31, 1986, the date on which the
Department of Social Services filed a petition with
the Marquette County Probate Court, alleging
abuse and neglect of Judith and requesting the
court to assume jurisdiction over the child. This
was not the state's first involvement with the
subject family, however. Several years earlier, respondents'
parental rights in their minor son,
Aaron, had been terminated on the basis of mental
illness. MCL 712A.19a(c); MSA 27.3178(598.19a)(c).
That action was affirmed by this Court. *In re
Schmeltzer,* unpublished opinion per curiam, decided
September 20, 1985 (Docket Nos. 78388,
78515).

The neglect and abuse petition filed by the DSS
in the present action contained the following allegations:

In the matter of Judith Schmeltzer, D.O.B.: 9/

* Circuit judge, sitting on the Court of Appeals by assignment.

22/85, the above named child comes within the provisions of MCLA 712A.

Allegations: Whose home or environment by reason of neglect and cruelty on the part of her parents, is an unfit place for her to live in, to-wit:

On December 3, 1985, Judith was seen by Dr. Pillotte who noted the presence of facial bruises. Neither parent could identify the cause of these injuries.

On January 29, 1986, Protective Services worker Dan Forrester visited the Schmeltzer home and found Judith wedged into a corner of her crib with one leg pushed down between the mattress and a crib side; Dale Schmeltzer stated that he does this deliberately to prevent Judith from rolling onto her back as she cries whenever she is in that position.

Mr. Forrester also noted the presence of bruises —one on her left temple and another behind her left ear; subsequent physical examination revealed a third bruise on her lower back. Neither parent could identify the cause of these injuries.

Both parents suffer from mental illness which affects their ability to parent children and was the proximate cause of termination of their parental rights to their first child on May 7, 1984; neither of their respective mental conditions have improved substantially since then.

At a preliminary hearing conducted on January 31, 1986, the court found there was probable cause to authorize the petition and ordered that counsel be appointed for respondents and the child. An extended preliminary hearing was scheduled for February 5, 1986. In the interim, Judith was placed in temporary foster care.

At the extended preliminary examination, respondents denied the petition's allegations and requested a jury trial for the adjudicative stage of the proceedings. Judith was to continue in temporary foster care pending resolution of the matter.

On February 17, 1986, respondents filed a motion to disqualify the probate judge assigned to the case for the reason that he presided over the case that had resulted in the termination of the parental rights in Aaron. Because of this, respondents alleged that the judge was biased or prejudiced against them. Following a March 3, 1986, hearing, the probate judge denied the motion for disqualification. Respondents thereafter requested de novo review of that decision. A transcript of the motion hearing was ordered and another judge was assigned to review the motion. Before the review could be conducted, though, respondents, on April 10, 1986, withdrew the motion.

On April 28, 1986, the DSS filed a petition for termination of parental rights. The petition was meant to place respondents on notice that, should a jury decide at the adjudicative hearing that the probate court has jurisdiction over Judith, the state would seek termination of their parental rights at the initial dispositional hearing.

The adjudicative hearing was held on May 6-8, 1986. At the conclusion of the hearing, the jury found the petition's allegations to be true by a preponderance of the evidence and that such was sufficient to confer jurisdiction over Judith to the probate court. MCL 712A.2(b)(2); MSA 27.3178(598.2)(b)(2).

On May 30, 1986, the probate court conducted the dispositional hearing. The evidence presented at the hearing was the same as that presented at the adjudicative hearing; no new evidence was presented. Some of that evidence consisted of the testimony of the social worker-therapist assigned to respondents' case. By a written opinion dated July 11, 1986, the probate court found there was clear and convincing evidence to terminate respondents' parental rights because of mental illness

and abuse. MCL 712A.19a(c) and 712A.20; MSA 27.3178(598.19a)(c) and 27.3178(598.20).

Respondents appealed the probate court's order of termination to this Court. In an unpublished, per curiam opinion, decided March 19, 1987 (Docket No. 94254), another panel of the Court held that the testimony of respondents' therapist was a violation of their social worker-client privilege, contrary to MCL 339.1610; MSA 18.425(1610). Consequently, the Court reversed the order of termination and remanded the matter for further proceedings. The DSS, thereafter, filed an application for leave to appeal that decision with the Supreme Court, but it was denied. *In re Schmeltzer*, 428 Mich 913 (1987).

On August 25, 1987, the DSS filed a second petition for termination of parental rights. At the hearing, which was held on October 19-20 and November 3, 1987, respondents were represented by separate counsel. All parties stipulated to the admission of evidence introduced during the termination proceedings as to Aaron. And, except for the testimony of respondents' therapist, the probate court considered all testimony and evidence previously admitted in the case. Additional testimony was taken from several witnesses, including both respondents and the protective services worker handling the case.

On January 5, 1988, the probate court issued a comprehensive and thorough written opinion and order, finding that there was clear and convincing evidence to terminate respondents' parental rights in Judith on the grounds of mental illness, neglect, and cruelty. MCL 712A.19a(c) and (e) and 712A.20; MSA 27.3178(598.19a)(c) and (e) and 27.3178(598.20).

Respondents filed separate appeals from that opinion and order, each raising several issues

(some of which are identical and will be discussed jointly herein).

II

The first issue, which is raised only by respondent-father, is whether the probate judge erred in refusing to disqualify himself or, in the alternative, whether respondent-father was denied the effective assistance of counsel because his trial counsel failed to pursue the disqualification claim. These arguments must fail for a number of reasons.

Respondent-father, by withdrawing the motion for disqualification, implicitly acquiesced in the probate judge's presiding over the case. His failure to pursue the claim below should bar his attempt to assert error on appeal. See *Beulah Missionary Baptist Church v Spann,* 132 Mich App 118, 124; 346 NW2d 911 (1984), lv den 419 Mich 921 (1984). As to the ineffective assistance of counsel claim, that too has been waived. Respondent-father's failure to raise the claim below by way of a motion for new trial or an evidentiary hearing has precluded the development of a record sufficient for this Court to reach and decide the issue. *People v Ginther,* 390 Mich 436, 442-443; 212 NW2d 922 (1973); *People v Lawson,* 124 Mich App 371, 373; 335 NW2d 43 (1983). Even if the issue was properly preserved, there is little merit to the claim that the probate judge was biased or prejudiced against him. The mere fact that a judge had previously conducted a proceeding involving the same party is not, by itself, a sufficient basis for requiring disqualification. *Impullitti v Impullitti,* 163 Mich App 507, 514; 415 NW2d 261 (1987). The sole allegation of bias asserted by respondent-father is that the probate judge also presided over

the case involving Aaron. Respondent-father can hardly claim this prejudiced the probate judge against him since he stipulated to the court's consideration of the evidence presented in that case to reach a decision in the instant case. Hence, had the case been assigned to a new probate judge, that judge would have been apprised of the same information already known by the judge who respondent-father sought to disqualify. Respondent has failed to prove that the probate judge was biased or prejudiced against him as required for disqualification by MCR 2.003(B)(2). *People v White*, 411 Mich 366, 386; 308 NW2d 128 (1981).

III

The next issue, which is again raised by respondent-father only, is whether the jurisdictional petition contained sufficient allegations of neglect.[1] Having reviewed the petition's allegations, which are set forth in full *ante*, we find that they were sufficient to place respondent-father on notice of the basis for the requested court intervention and that they sufficiently alleged acts constituting neglect within the meaning of MCL 712A.2(b)(2); MSA 27.3178(598.2)(b)(2). *In re Martin*, 167 Mich App 715, 723-724; 423 NW2d 327 (1988).

---

[1] We would note there is currently a split among panels of this Court regarding whether an aggrieved parent may collaterally attack alleged errors occurring at the adjudicative hearing. Compare *In re Dupras*, 140 Mich App 171, 173; 363 NW2d 26 (1984), and *In re Adrianson*, 105 Mich App 300, 311; 306 NW2d 487 (1981)(not permitting collateral attack), with *In re Ferris*, 151 Mich App 736, 744; 391 NW2d 468 (1986), lv den 426 Mich 856 (1986)(permitting collateral attack). However, all cases are in agreement that the legal sufficiency of the petition itself is always subject to attack, even collaterally. See *In re Youmans*, 156 Mich App 679, 684; 401 NW2d 905 (1986), lv den 428 Mich 871 (1987).

IV

In the written opinion terminating respondents' parental rights, the probate judge stated in part:

Termination in this case is warranted under Sections 20, 19a(c) and 19a(e) of the Juvenile Code. Termination is also in the child's best interest.

Respondent-mother now asserts that reversal is required because the above statement reveals that the probate court improperly considered Judith's best interests as a basis for termination. We find no error in the judge's ruling.

It is well established that the best interests of the child may not justify terminating a parent's rights in his or her child before clear and convincing proof of the existence of a statutory ground for termination has been established by the requisite proof. After a statutory ground for termination is established, the court may consider the best interests of the child in determining whether the parent's rights in that child should be terminated. *In re Youmans,* 156 Mich App 679, 689-690; 401 NW2d 905 (1986); *In re Slis,* 144 Mich App 678, 684-685; 375 NW2d 788 (1985). In the instant case, we are convinced, after reviewing the entirety of the written opinion, that the probate judge considered Judith's best interest only *after* determining that a statutory ground for termination was proven by clear and convincing evidence. This was proper. There is simply no basis for respondent-mother's assertion of error.

V

The next issue on appeal is raised by both respondents: Whether the probate judge erred in holding there was clear and convincing evidence to

terminate respondents' parental rights on the basis of neglect. MCL 712A.19a(e); MSA 27.3178(598.19a)(e).

This Court reviews the decision of a probate court to terminate parental rights under the clearly erroneous standard. *In re Campbell,* 170 Mich App 243, 253-254; 428 NW2d 347 (1988). A decision is clearly erroneous when, although there is sufficient evidence to support the decision, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed. *In re Cornet,* 422 Mich 274, 277-278; 373 NW2d 536 (1985). The petitioner bears the burden of proving by clear and convincing evidence that termination of parental rights is warranted. *In re Campbell, supra,* p 255.

A termination order based on neglect must be based on evidence of such a nature as to establish neglect, or the serious threat of neglect, of the child for the long-run future. *Fritts v Krugh,* 354 Mich 97, 114; 92 NW2d 604 (1958). Unfortunately, the amount of neglect necessary to justify termination of parental rights is not capable of precise or exact definition. *In re Bidwell,* 129 Mich App 499, 505; 342 NW2d 82 (1983). Also, unfortunately, the type of neglect necessary for termination has not been clearly spelled out by statute. See *In re Bailey,* 125 Mich App 522; 336 NW2d 499 (1983). As a result, there is currently a split among panels of this Court whether "neglect" necessarily entails a showing of culpability or blameworthiness. One line of cases has held that there must be a showing of culpability to terminate parental rights on the basis of neglect. See, e.g., *In re Kellogg,* 157 Mich App 148, 154; 403 NW2d 111 (1987); *In re Youmans, supra,* p 689; *In re Tedder,* 150 Mich App 688, 698; 389 NW2d 149 (1986), lv den 426 Mich 874 (1986); *In re McDuel,* 142 Mich App 479,

485; 369 NW2d 912 (1985); *In re Bailey, supra,* p
527. A recent line of cases, starting with *In re
Sterling,* 162 Mich App 328, 337-341; 412 NW2d
284 (1987), consideration of conflict declined 429
Mich 1210 (1987),[2] have held that a showing of
culpability or blameworthiness is not required
under § 19a(e). See, also, *In re Campbell, supra,* pp
254-255; *In re Webster,* 170 Mich App 100, 109;
427 NW2d 596 (1988).

We have carefully reviewed the holdings of the
above cases, and the analyses employed therein,
and conclude that a showing of culpable neglect is
not required to terminate parental rights under
§ 19a(e). We therefore adopt the *Sterling* position
on this issue.[3]

Applying the neglect standard, we find there
was clear and convincing evidence to establish
neglect or the serious threat of neglect of Judith
by both respondents in the long-run future. The
probate judge, in his written opinion, set forth in
great detail the extensive evidence of neglect. We
will highlight the most compelling evidence. At
the time of Judith's birth, she was in the ninety-
fifth percentile for height and weight. After being
in respondents' care and custody for only four
months, she had dropped to the fiftieth percentile.
Judith's pediatrician attributed the lack of devel-
opment to respondents' not feeding her enough.
The pediatrician requested that Judith be brought
to her office every week for examination. This was

[2] *Sterling* was the first opinion in which a majority of the Court
adopted the position that a showing of culpability is not a prerequisite
for terminating parental rights on the basis of neglect. But that view,
and some of the analysis employed by *Sterling,* was previously es-
poused by Judge BATZER in his partial concurrence and dissent in *In
re Bedwell,* 160 Mich App 168, 177-181; 408 NW2d 65 (1987).

[3] Judge MAHER acknowledges he was on the *In re Youmans* panel
which required a showing of culpability. Judge MAHER has since
reversed his position and now subscribes to the holdings of *Sterling*
and its progeny.

the first time in twenty-two years of practice that the pediatrician required such frequency of visitation.

On several occasions, unexplained bruises appeared on Judith's face and body. The pediatrician testified that the child was too young and immobile to have injured herself. The bruises were also in areas protected by the child's facial features. Once Judith was placed in foster care, there were no further occurrences of bruising. Moreover, by his own admissions, respondent-father had wedged Judith in between the side of the crib and the mattress to prevent her from crying and moving about. Although it appears that respondent-father was primarily responsible for this possible abuse, respondent-mother must share the responsibility since she was aware of respondent-father's acts and yet failed to protect Judith. See *In re Rinesmith,* 144 Mich App 475, 483-484; 376 NW2d 139 (1985), lv den 424 Mich 855 (1985).

Apparently, too, respondents' treatment and care of Judith was similar to that of Aaron, in whom their parental rights were previously terminated. How a parent treats one child is probative of how he or she treats another. *In re Futch,* 144 Mich App 163, 167-168; 375 NW2d 375 (1984); *In re LaFlure,* 48 Mich App 377, 392; 210 NW2d 482 (1973), lv den 390 Mich 814 (1973). Evidence presented at the various hearings indicated that respondents had not properly diapered, bathed, fed, or held either Aaron or Judith.

Both respondents have personality and mental disorders. Respondent-father was diagnosed as having a histrionic personality disorder; respondent-mother has a bipolar disorder, manic with psychotic symptoms with a secondary diagnosis of a

dependent personality.[4] These disorders impair respondents' ability to care for Judith. As the trial court found, they tend to meet their own needs at the expense of the child's. They have neglected Judith's needs for nurturance. Their adherence to instructions given by outside care providers has been haphazard. They have failed to follow some instructions, such as sterilizing the baby bottles, while adhering too rigidly to others, such as limiting the amount of Judith's formula to that initially recommended by the pediatrician, thus resulting in her early lack of development.

Upon reviewing the entire record, we are not convinced the probate court clearly erred in terminating the parental rights in Judith. There was sufficient evidence to establish neglect or the serious threat of neglect for the long-run future. We also agree that it was in Judith's best interests to terminate respondents' parental rights.

Because we find there was a sufficient basis for terminating respondents' parental rights on the basis of neglect, it is unnecessary to address their claim that the probate court erred in terminating parental rights pursuant to MCL 712A.19a(c); MSA 27.3178(598.19a)(c). See *In re Brown,* 149 Mich App 529, 543-545; 386 NW2d 577 (1986).

Affirmed.

HOLBROOK, JR., J. *(concurring).* While I do not subscribe to the views expressed in *In re Sterling,* 162 Mich App 328, 336-341; 412 NW2d 284 (1987), I would still affirm, since my review of the record leads me to conclude that respondents have been

---

[4] Respondent-mother claims that, through the use of medication, she has been able to control her personality disorders and is now capable of parenting Judith. The truth of this assertion is cast in doubt by the fact that she is apparently still classified as totally mentally disabled by the Social Security Administration and receives government assistance for support.

guilty of culpable neglect justifying affirmance under the majority view. See *In re Bailey*, 125 Mich App 522; 336 NW2d 499 (1983), and *In re McDuel*, 142 Mich App 479, 485; 369 NW2d 912 (1985).