# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CLAYTON/HICKMAN, Minors.

UNPUBLISHED
September 27, 2016

No. 331678
Wayne Circuit Court
Family Division
LC No. 10-494553-NA

Before: BORRELLO, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

Respondent father appeals by right a January 27, 2016 order terminating his parental rights to the minor child JH pursuant to MCL 712A.19b(3)(c)(*i*), (g) and (j). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

In 2010, petitioner, Department of Health and Human Services (DHHS) became involved with the mother of JH. At the time, the mother had three other children. One of the children suffered suspected physical abuse and DHHS petitioned to remove the three children. The three children had three different fathers, none of whom were involved in the children's lives. After mother complied with a treatment plan, the children were returned to her care.

On July 16, 2014, mother gave birth to her fourth child, JH. At the time of the birth, JH and mother had cocaine and opiates in their systems and JH needed treatment to address withdrawal symptoms. On July 29, 2014, DHHS filed a petition to remove JH and the other children from mother's care. DHHS alleged that mother had an ongoing substance abuse problem that interfered with her ability to provide care for the children. DHHS alleged that respondent father, who was the putative father at the time, had a lengthy criminal history that included felony drug convictions and that respondent did not provide for JH. The court authorized the petition and the children were removed from mother's care on July 22, 2014, and placed with the maternal grandmother.

Initially, DHHS was aware that respondent was the putative father of JH, and that respondent was incarcerated. After he was released on parole, respondent appeared at a

September 30, 2014, hearing and acknowledged paternity of JH. Paternity was later confirmed by an affidavit of parentage.[1]

On October 14, 2014, at a pre-trial hearing, mother admitted that she abused controlled substances including cocaine while she was pregnant with JH and she admitted that her other children were previously removed from her care following allegations of physical abuse. At the hearing, respondent admitted that he was incarcerated during mother's pregnancy with JH following a conviction for delivering and manufacturing controlled substances. Respondent was on parole at the time of the hearing. The court assumed jurisdiction over the children. The children remained in the care of the maternal grandmother. After the October 14, 2014, hearing, mother did not appear in court again and her whereabouts were unknown.

Thereafter, the court held several dispositional review hearings. The court ordered DHHS to provide a parent-agency agreement plan to respondent. DHHS presented the plan to respondent on November 12, 2014. Under the terms of the plan, respondent needed to secure suitable housing and suitable income, participate in parenting classes, remain in contact with the case worker, abide by the terms of his parole, participate in visitations, and attend all court hearings. The court ordered respondent to comply with these terms. Respondent failed to do so.

On February 5, 2015, the court held another dispositional review hearing. Respondent was not present and he had absconded from parole. Respondent had not visited JH regularly, having last visited JH on Thanksgiving 2014. After that, respondent did not have contact with JH "for some time," and respondent failed to provide DHHS with a valid address.

On May 4 and June 3, 2015, the court held hearings. Respondent was incarcerated after violating the terms of his parole. He was released but did not attend the June hearing. Respondent was not visiting JH and was in non-compliance with the treatment plan. The court ordered DHHS to file a petition for permanent custody.

Thereafter in September and October 2015, respondent was again incarcerated for violating the terms of his parole. Respondent was released and resided in a treatment facility for a short time where he was provided services including substance abuse treatment and mental health services. Respondent then failed a drug test in violation of his terms of parole and he was again incarcerated. Meanwhile, JH was "thriving" in his foster home. On September 23, 2015, DHHS filed a supplemental petition for permanent custody of JH.

The trial court held a termination hearing on January 26, 2016. Respondent was incarcerated and not in attendance. JH's maternal grandmother testified that JH was in her care since birth and that JH was doing well. The grandmother testified that she was willing to adopt JH. The grandmother testified that for the past two years, respondent was incarcerated on and off and he had not visited JH more than four times. Respondent did not provide any financial support for JH and had not provided any necessities for the child.

---

[1] Although the court terminated mother's parental rights and the rights of the fathers of JH's siblings, this appeal only concerns the termination of respondent's parental rights to JH.

Renita Young, a DHHS foster care worker, testified that, according to the record, respondent was provided a treatment plan in October 2014. However, Young agreed that she was not the caseworker at the time and she gave respondent a copy of the treatment plan in October 2015. She testified that respondent violated the terms of his parole and was incarcerated from February 17, 2015 to September 2015, when he was released to participate in a Stepdown program where he received services such as substance abuse counseling. However, during his time in the Stepdown program, respondent again tested positive for controlled substances and he was again incarcerated on November 15, 2015. Young testified that, when respondent was not incarcerated, he failed to comply with his treatment plan. Respondent was referred to parenting classes, but he did not participate. Respondent did not appear for hearings and he did not submit any proof of income. When respondent was released on parole, he visited JH twice, but he was not consistent with his parenting visits. Young testified that DHHS sought termination because respondent did not spend much time with JH, he was not involved in JH's life, he had not provided emotional or financial support, and JH needed permanency. Respondent never came into compliance with his treatment plan, he violated parole and tested positive for drugs. Young testified that it was in JH's best interests to terminate respondent's parental rights.

The trial court found grounds for termination under MCL 712A.19b(3)(c)(i), (g) and (j). The court explained as follows:

One gets the feeling that [respondent] is serving a life sentence on the installment plan. This is very sad. The drugs have him. [Respondent] has a large number of gang tattoos on him. This is all very sad. It doesn't take much to become somebody in our society. It does take a high school diploma, a little bit more training than that. It takes workplace readiness skills. Really simple stuff. Knowing enough to show up, be on time, doing what you're told to, be on time, leave drugs alone.

[Counsel] tries to take a weakness and turn it into a strength . . . Respondent is very hard to service because he's hard to find if he's not in prison. When he's in prison or jail he's easy to find. He's tough to provide services to or to get to do anything.

[] There's no reasonable likelihood the conditions would be rectified within a reasonable time considering the child's age.

It's my job to try and get people to cross a series of finish lines. It would please me very much if [respondent] were to whip his addiction, focus on becoming somebody, get the training necessary to become somebody, become somebody, make me proud of him, make his child proud of him . . . But based upon what I've seen it simply is not going to happen. He has to make that choice. And he hasn't made it.

Further, I'd find grounds under 3(G) and 3(J). [Respondent] he can't provide proper care or custody for the child. There's no reasonable expectation that he'll whip the drug problem he has, focus on making something of himself, be a parent within a reasonable time considering the child's age. []

-3-

And there's a reasonable likelihood based upon dad's, both conduct and capacity that the child . . . would be harmed if returned to dad. . . .

The court also found that termination was in JH's best interests, reasoning that respondent did not "seek his child out," and finding that the maternal grandmother would provide stability and permanency for JH. This appeal ensued.

## II. ANALYSIS

### A. Statutory Grounds for Termination

On appeal, respondent contends that the trial court clearly erred in finding statutory grounds for termination.

A trial court's conclusion that there exists a statutory basis to terminate a respondent's parental rights is reviewed for clear error. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed." *In re Campbell*, 170 Mich App 243, 253-254; 428 NW2d 347 (1988). In making that determination, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989); see also MCR 2.613(C).

A trial court's grounds for terminating parental rights under MCL 712A.19b must be established by clear and convincing evidence. *In re McIntyre*, 192 Mich App 47, 50; 480 NW2d 293 (1991). The circuit court found grounds for termination under MCL 712A.19b(3)(c)(*i*) and (g), which provide that termination is appropriate in relevant part as follows:

> (c) [] 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

In this case, the court removed JH in July 2014 and assumed temporary jurisdiction over JH in October 2014. The conditions that led to initial dispositional order were substance abuse, criminality and neglectful parenting. The court terminated respondent's rights on January 26, 2016, more than 182 days later. There was clear and convincing evidence that the conditions that led to the adjudication continued to exist and there was no reasonable likelihood that the

-4-

conditions would be rectified within a reasonable time considering JH's age. MCL 712A.19b(3)(c)(*i*). There was also clear and convincing evidence that respondent failed to provide proper care or custody for JH and there was no reasonable expectation that respondent would be able to provide proper care and custody within a reasonable amount of time. MCL 712A.19b(3)(g).

Here, contrary to respondent's contention on appeal, respondent was provided a treatment plan well before the termination hearing such that he had time to rectify the problems that led to the initial adjudication and to show that he could provide proper care and custody of JH. He failed to do so. Specifically, DHHS provided the treatment plan to respondent on November 12, 2014, at a hearing. Respondent was informed of what he needed to do to obtain custody of JH. Respondent was informed that he needed to obtain suitable housing and suitable income, abide by the terms of his parole, participate in parenting classes, remain in contact with the caseworker, attend all hearings, and participate in visitations. The record reflects that respondent failed with respect to all of these responsibilities. In particular, less than three months after receiving the treatment plan, respondent absconded from parole. This was the first of many times that respondent failed to abide by the terms of his parole, which led to a damaging pattern of respondent being released from prison only to be re-incarcerated shortly thereafter. Respondent's behavior showed that he had not rectified the conditions that led to the adjudication and that there was no likelihood he would do so in a reasonable amount of time.

Moreover, respondent's actions showed that he failed to provide proper care or custody of JH and that there was no reasonable expectation that he would be able to do so within a reasonable amount of time. During the time that he was on parole, respondent did not visit JH regularly and respondent never provided anything for JH. He did not provide financially and he did not provide any necessities such as clothing for JH. The grandmother's testimony showed that respondent was not invested in JH's life. Although respondent acted properly during visits, his conduct overall showed that he was not committed to providing the care and support that JH needed. Instead, respondent repeatedly made choices that were neither in his nor JH's best interests. Respondent was given the opportunity to reform himself, but he did not take advantage of the opportunity. For example, when he was discharged into a Stepdown program where he was provided substance abuse counseling and other services, he left the center and then returned and failed drug tests and was re-incarcerated. Finally, at the outset, respondent was referred for parenting classes and he did not participate and respondent did not present any proof of suitable income or a suitable living arrangement.

In short, the record shows that respondent had not overcome his drug addiction or the criminality that resulted in his felony convictions and incarceration that led to the initial adjudication in this case. Respondent had nearly 15 months to change his behavior and comply with his treatment plan, but he failed to do so and there was no evidence to support that respondent would rectify the conditions within a reasonable amount of time considering JH's age. MCL 712A.19b(3)(c)(*i*). Similarly, the same evidence supported the trial court's finding that respondent failed to provide proper care or custody of JH and that there was no likelihood that he would be able to do so within a reasonable amount of time considering JH's age. MCL 712A.19b(3)(g). Given our conclusion that one ground for termination was established by clear and convincing evidence, we need not address the trial court's other grounds for termination. *In re Utrera*, 281 Mich App 1, 24; 761 NW2d 253 (2008).

## B. Best Interests

Next, respondent argues that the court erred in concluding that termination was in the JH's best interests.

We review for clear error a trial court's conclusion that terminating a respondent's parental rights is in the child's best interests. *In re Olive/Metts Minors*, 297 Mich App at 40.

If the circuit court determines that clear and convincing evidence supports a statutory basis for the termination of parental rights, "it shall order termination of parental rights if it finds 'that termination of parental rights is in the child's best interests[.]'" *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009), quoting MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (internal quotation marks and citation omitted).]

In this case, the circuit court did not clearly err in finding that termination was in JH's best interests. At the time of the termination, JH had lived with his maternal grandmother since his birth and she was interested in adopting him. The record indicated that JH was "thriving" in the grandmother's care. The grandmother provided a stable home environment and the permanency that JH needed and, contrary to respondent, the grandmother was wholly invested in JH's life. In contrast, respondent did not provide anything for JH and was not invested in JH's life. He did not provide financial or emotional support and when he was on parole he did not visit the child on a regular basis. Respondent had not made progress with his substance abuse problem and he could not conform his behavior to the terms of his parole. Respondent absconded from parole and repeatedly failed drug screenings. He did not offer proof of suitable income or suitable housing. The record showed that respondent could not offer the care and long-term stability that JH needed. Accordingly, the trial court did not clearly err in finding that termination was in JH's best interests. *In re Moss*, 301 Mich App at 90.

Affirmed.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Riordan