*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re J J HOLBROOK, Minor.

UNPUBLISHED
May 19, 2022

No. 359504
Oakland Circuit Court
Family Division
LC No. 2020-882579-NA

Before: SWARTZLE, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

Respondent appeals the trial court order finding statutory grounds for jurisdiction over the minor child, JJH, under MCL 712A.2(b)(1) (parent, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for health or morals or parent presents a substantial risk of harm to the child's mental well-being). We affirm.

## I. BACKGROUND

JJH has a complex mental health history that was addressed with various treatment modalities for a number of years. When JJH's emotional outbursts, physical aggression, and self-harming behaviors increased in frequency and intensity, respondent took JJH to a local hospital because she could no longer keep JJH safe. JJH was transferred from the hospital to a mental health facility for inpatient treatment.

While JJH was at the mental health facility, Child Protective Services (CPS) became involved due to allegations of physical abuse and neglect. In preparation for JJH's return home, CPS investigator Christian Saba worked with respondent on establishing a safety plan. Saba and other CPS workers repeatedly asked respondent to complete paperwork for Community Mental Health (CMH) services so that additional mental health resources could be accessed for JJH.[1]

---

[1] Due to the nature of respondent's insurance, there were barriers in getting him treatment. The CMH paperwork was necessary to put JJH in the CMH network to access services that private insurance could not provide.

Respondent advocated for JJH's admission to a long-term residential treatment program. But mental health professionals allegedly told DHHS that JJH did not meet the criteria for long-term residential treatment services and all other options, such as in-home treatment, would have to be exhausted first. Saba and respondent discussed intensive in-home mental health services recommended by the mental health professionals. Respondent refused the in-home services, did not fill out the CMH paperwork, and did not provide an alternative plan for JJH's care in lieu of returning home.

After several weeks at the mental health facility, JJH was transferred to a short-term crisis center to prepare for reintegration into the family home. JJH's self-harming behavior and aggression escalated at the short-term crisis center. Due to the lack of adequate resources to address JJH's risks and needs, the short-term crisis center released JJH from its services. JJH threatened suicide if he was returned home with respondent. Respondent refused to pick JJH up from the short-term crisis center because she did not feel safe around JJH and she would not allow him to return to her home due to the risk of harm to himself and others.[2]

In advance of filing its petition for temporary custody of JJH, DHHS enlisted the assistance of the Regional Placement Unit (RPU) to find suitable placement to address JJH's mental health needs. A placement was found at a residential treatment program, but respondent refused to transport JJH there. Saba warned respondent that she would be charged with neglect if she refused to pick JJH up from the short-term crisis center. Respondent stated that she would accept whatever penalties would be imposed because she did not feel safe with JJH.

DHHS filed a temporary custody petition requesting that the trial court take jurisdiction over JJH under MCL 712A.2(b)(1) and/or (2). The petition alleged that JJH was "abandoned" at the short-term crisis center, that respondent had refused multiple services offered, that respondent would not allow JJH to return home, and that respondent stated that she was unable and unwilling to care for JJH. A referee concluded that there were reasonable grounds to remove JJH and entered an interim placement order granting DHHS custody of JJH.[3] On the same day, a DHHS employee transported JJH to the residential treatment center for admission.

Following a bench trial, the trial court determined that there was sufficient evidence to establish a statutory basis to exercise jurisdiction over JJH pursuant to MCL 712A.2(b)(1). This appeal followed.

## II. STANDARD OF REVIEW

This Court "review[s] the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004).

---

[2]  It was undisputed that JJH had suicidal tendencies, a history of sexually assaulting a younger sibling in respondent's home, and violence against respondent.

[3]  JJH's presumed legal father (by marriage) was excluded as JJH's father through DNA testing. JJH's biological father signed an Affidavit of Parentage, but was unable and unwilling to care for JJH.

A finding is clearly erroneous when this Court is "left with a definite and firm conviction that a mistake has been made." *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016) (quotation marks and citations omitted). "To be clearly erroneous, a decision must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). This Court must consider "the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id.*

## III. ANALYSIS

Respondent argues that the trial court erred in finding statutory grounds to exercise jurisdiction under MCL 712A.2(b)(1). We disagree.

There are two phases to child protection proceedings, the adjudicative phase and the dispositional phase. MCR 3.972; *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006). At issue in this case are the circumstances of the adjudicative phase. "The adjudicative phase occurs first and involves a determination whether the trial court may exercise jurisdiction over the child, i.e., whether the child comes within the statutory requirements of MCL 712A.2(b)." *In re AMAC*, 269 Mich App at 536 (citation omitted). The trial court must find that a statutory basis for jurisdiction exists by a preponderance of the evidence. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004).

The trial court found statutory grounds to exercise jurisdiction over JJH under MCL 712A.2(b)(1), which states, in part:

> (b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals . . . .

The trial court noted that Saba testified that there were a number of barriers to JJH's mental health treatment, including respondent's private health insurance and the fact that community-based services had to be exhausted before residential treatment could be considered. The trial court referenced Saba's testimony that respondent did not complete the necessary CMH paperwork so that JJH could be placed in the CMH network to access additional mental health resources. In determining that there were statutory grounds to exercise jurisdiction, the trial court reasoned:

> [A]lthough I find that mother's behaviors all along the way have been as much as she possibly could to provide proper care and custody for her child, I am going to find that because that child does come under the Court's jurisdiction pursuant to MCL 712A.2(b)(1), that "the parent or person legally responsible for care and maintenance of the juvenile when able to do so neglected or refused to provide proper medical care." And I only make that finding based on the failure to complete the CMH documentation. That's—that's all I got.

-3-

[T]he records are replete that this child not only has multiple attempts of suicide, [but he] has threatened to kill himself or to kill his mother if [he] came into her care. But the law doesn't provide for when a parent can't handle the overwhelming circumstances of their child's mental health.

A similar conundrum existed in *In re Hockett*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 353132). In that case, the minor child was hospitalized after his mental health problems escalated to threats of harm to another child and threats of suicide. *Id*. at ___; slip op at 1-2. The respondent declined to pick the child up from the hospital when he was released because she believed that he needed further help for his mental problems and she was homeless. *Id.* The trial court found statutory grounds for jurisdiction under MCL 712A.2(b)(1), concluding that the respondent "failed to provide proper and necessary support and care for [the minor child], who was subject to a substantial risk of harm to his mental health and wellbeing." *Id*. at ___; slip op at 3. This Court affirmed, reasoning:

> The trial court and this Court acknowledge the extremely difficult position in which the respondent found herself. She had no home. She had a child whose mental health issues were significant. She wanted the kind of care for [the minor child] that he only began to get when the state assumed jurisdiction. While she is not a mental health care professional, respondent sensed, and later mental health care professionals agreed, that [the minor child] needed more than respondent could give. It is unfortunate that our statute uses the word "unfit" to describe situations such as this. We note that "the underlying purpose of the statutory scheme is to protect children from an unfit homelife." Unfitness connotes active wrong doing which we do not see in this case. The statute however implies some understanding of the existence of parents who do not have the resources to provide for their children in the phrase "when able to do so". This mother was unable to manage the complex mental health needs of her child. The trial court correctly determined that respondent declined to retrieve her child upon discharge. The court also correctly noted that respondent had the physical capacity to retrieve her minor child and did not do so . . . . However, "culpability is not a prerequisite for probate court intervention under § 2(b)(2)." Respondent's admitted inability, not her *unwillingness* to care for [the minor child's] special needs with the level of assistance she was receiving, along with her homelessness rendered [the minor child's] home a place of danger for the seriously ill child and thus, statutorily unfit. [*Id.* at ___; slip op at 3 (emphasis in original, citations omitted).]

Respondent here was similarly unable to manage the complex mental health needs of JJH. The evidence revealed that JJH was unable to return to respondent's home, there was no other relative who could care for him, and the short-term crisis facility was unable to address his mental health needs. Respondent had the physical capacity to complete the CMH paperwork to obtain the resources for JJH's mental health treatment, but she did not do so. As a result, JJH did not have the necessary resources for his mental health care, his mental well-being was subjected to a substantial risk of harm, and he was without proper custody or guardianship. The evidence established that the only way JJH was going to get the mental health treatment he needed was for the trial court to force the issue and exercise jurisdiction over JJH. While we acknowledge the

difficult nature of the situation, we are not left with a definite and firm conviction that the trial court was mistaken in finding statutory grounds for jurisdiction under MCL 712A.2(b)(1). Culpability is not a factor here. As our Supreme Court has recognized, "[t]he purpose of the juvenile code . . . is to protect children from an unfit home, not to punish bad parents." *In re Jacobs*, 433 Mich 24, 41; 444 NW2d 789 (1989). "[T]he Legislature did not intend for children to suffer long term damage merely because the neglect by the parents was not culpable." *In re Campbell*, 170 Mich App 243, 255; 428 NW2d 347 (1988) (citations omitted).

Respondent also argues that the trial court erred when it determined that there were grounds to exercise jurisdiction over JJH because he was in residential, inpatient care and, therefore, he was not without proper care or custody. "When considering whether to exercise jurisdiction under MCL 712A.2(b), the trial court must examine the child's situation at the time the petition was filed." *In re Hockett*, ___ Mich App at ___; slip op at 3. At the time that the petition was filed, JJH was at the short-term crisis center. It is undisputed that the short-term crisis center was not capable of addressing JJH's mental health needs and had released JJH from its care. JJH was not transported to the residential treatment facility until after the petition was filed and the trial court assumed jurisdiction over JJH. Thus, the threat to JJH's well-being had not ceased at the time that the petition was filed and there is no clear error on this basis.

## IV. CONCLUSION

For the reasons stated in this opinion, we affirm the trial court's order concluding that there was sufficient evidence to establish a statutory basis to exercise jurisdiction over JJH pursuant to MCL 712A.2(b)(1).

/s/ Brock A. Swartzle
/s/ Thomas C. Cameron
/s/ Sima G. Patel