# STATE OF MICHIGAN

# COURT OF APPEALS

In re GREGORY, Minors.

UNPUBLISHED
June 23, 2016

No. 330132
Wayne Circuit Court
Family Division
LC No. 14-515591-NA

In re GREGORY, Minors.

No. 330133
Wayne Circuit Court
Family Division
LC No. 14-515591-NA

Before: MURPHY, P.J., and SAAD and BORRELLO, JJ.

PER CURIAM.

In these consolidated appeals, in Docket No. 330132, respondent father, and in Docket No. 330133, respondent mother, appeal by right an October 21, 2015, circuit court order terminating respondents' parental rights to the minor children BG (d/o/b: 9/18/2010) and IG (d/o/b: 3/19/2009) pursuant to MCL 712A.19b(3)(c)(*i*) and (g). For the reasons set forth in this opinion, we affirm.

## A. BACKGROUND

In 2013 and 2014, there were several Child Protective Services (CPS) complaints involving respondents and the minor children. On January 30, 2014, the Department of Health and Human Services (DHHS) petitioned for removal following another CPS complaint. Specifically, DHHS learned that the children were staying with respondents who were "squatting" in an apartment with a friend and multiple other individuals. The apartment did not have heat or running water and there was only one bed in the apartment. In addition, DHHS alleged that both mother and father were abusing prescription drugs including Xanax, Suboxone, and Adderall and respondent father spent all of his income on purchasing the drugs. Furthermore, mother admitted to being involved in a violent assault with a friend at the apartment in the presence of the children. DHHS requested removal under MCL 712A.2(b)(1)-(5) for failure to provide proper support and the home environment was unfit for children. The

-1-

circuit court entered an order authorizing removal and placing the children with the paternal grandparents.

Thereafter, the court held a pretrial hearing on February 25, 2014, wherein both parents testified and admitted to abusing prescription drugs and agreed that the drug abuse interfered with their ability to manage their lives and care for their children. Mother admitted to being involved in the assault and agreed that she did not have suitable housing, although father stated that he had obtained suitable housing since the removal date. Based on this information, the court assumed jurisdiction over the children, ordered that DHHS provide services, and ordered supervised parenting time with a grandparent to provide supervision. The court ordered both parents to provide documentation from their physician regarding prescribed medications and ordered that both parents submit to weekly random drug screens.

After assuming jurisdiction of the children, the court held several dispositional review hearings. On May 20, 2014, DHHS caseworker Lanell Morrison testified that the Department's plan was reunification and was providing parenting classes, substance abuse counseling, individual counseling and drug screening for both parents. In addition, mother was enrolled in an in-patient substance abuse treatment program and she was required to obtain a psychiatric evaluation. Both parents were participating in supervised parenting time, however, father had not provided documentation from his physician regarding his prescriptions. The court ordered continued services and granted DHHS discretion to allow unsupervised parenting time.

On July 30, 2014, DHHS transferred management of case services to Wolverine Human Services (Wolverine), a private agency. The record indicates that, as of July 30, 2014, neither parent was in compliance with the treatment plan. Although mother completed the inpatient program, she failed to timely enroll in the outpatient portion of the program and failed to submit to any of the required drug screens after she left the inpatient program on May 29, 2014. In addition, father only submitted three of 14 drug screens, two of which he failed. The trial court scheduled a dispositional review and permanency planning hearing and ordered continued services and supervised visitation.

At the October 20, 2014, permanency planning hearing, Onisia Martin, a caseworker with Wolverine, testified that both parents were participating in parenting time and they had a bond with the children. Father was participating in parenting classes; however, neither parent submitted to any of the mandatory drug screens and mother was not participating in her out-patient treatment plan. Martin recommended more time to allow the parents to work on their respective treatment plans.

The trial court held another dispositional review hearing on January 27, 2015. A new case worker, Monica Burrell, testified that the parents had only made "minimal progress" on their service plan. Father completed parenting classes and reported that he was employed, but he failed to provide proof of employment and neither father nor mother submitted to any of the required drug screens. In addition, both parents were living in an apartment with no lease and had canceled a home visit. Burrell agreed that Wolverine shared some of the blame for failing to refer mother for substance abuse treatment and parenting classes. The trial court ordered continued services with necessary referrals and ordered both parents to comply with the drug

screens and the treatment plan in general. The trial court also informed both parents that if they needed transportation for the drug screens, they could request bus tickets.

On April 8, 2015, the trial court held another dispositional review hearing. Neither parent attended the April 8, 2015 hearing. Burrell testified that the parents had not complied with "quite a few of their services." Father failed to provide proof of employment, failed to provide a physician's note for prescriptions, and failed to submit to any of the drug screens. Mother was referred for services, but she was terminated from parenting classes, made minimal progress in individual therapy, and failed to obtain a psychiatric evaluation. Furthermore, Burrell explained that both parents recently moved out of the apartment they were living in and moved into a "friend's home." Burrell explained that she was "brushed off" when she tried to set up a home visit. Burrell testified that both parents were offered bus passes for attending all of the services, but the parents declined. Burrell agreed that both parents were participating in visitation and that the visits went well; however, overall, Burrell explained that the parents were no closer to reunification then when the children were removed. The trial court found that reasonable efforts for reunification were made and authorized DHHS to move for termination. Thereafter, on May 7, 2015, DHHS filed a supplemental petition to terminate respondents' parental rights to both children under MCL 712A.19b(3)(c) and (g).

The court held three additional hearings before the termination hearing. On May 13 and May 21, 2015, evidence was submitted to show that both parents were in violation of the treatment plan, both having failed to submit to drug screens. Counsel for father argued that father was out of town for work, which caused him to miss the drug screens. However, Burrell noted that father failed to participate in drug screens before he allegedly started employment out of town and both parents constantly canceled home visits that she tried to arrange. Furthermore, Burrell provided the parents with a list of screening centers that were located near where they lived, one of which was within a 10 minute drive of where the parents lived. The trial court ordered father to present proof that he was out of town for employment if he missed additional drug screens.

The trial court held a two-day termination hearing on August 10, 2015 and October 19, 2015. On the first day of the hearing, both parents were present and the trial court noted that both parents failed to appear for a June 30, 2015, pretrial. Thereafter, a Sheriff's Deputy attempted to hand-deliver service at the parent's listed trailer home address, but no one was present. It was discovered that the parents were living in a motel and the trial court eventually effectuated service by certified mail and publication. The trial court took judicial notice of the record and proceeded to hear evidence.

Approximately two weeks before the termination hearing, caseworker Burrell went on medical leave and she was replaced by Kai Mason; Burrell was not available to testify and, because Mason was new to the case, Cerise Carrington of Wolverine testified instead. Carrington was the supervisor on the case from July 30, 2014, until approximately June 2015. Carrington explained that she was familiar with the treatment plan, communicated with the caseworkers and signed off on reports. DHHS called Carrington as a witness and she testified as follows:

Carrington explained that the children were removed in January 2014 primarily because of substance abuse. Both parents were given treatment plans and the children were placed with the paternal grandparents. The grandparents provided a stable home environment for the children and they were able and willing to plan long-term for the children. Carrington testified that both mother and father were living together and their last known residence was a motel. Mother had no legal income and she was terminated from parenting classes after two referrals. Mother was offered bus tickets for all services in her treatment plan. Mother completed in-patient substance-abuse treatment, but she failed to complete the outpatient portion of the program after she stopped attending. According to Carrington, mother stated that she did not complete the program because the provider did not contact her about transportation to the facility. Carrington explained that mother was required to do weekly random drug screens as part of her treatment plan; however, mother failed to complete a single screen. Mother missed an entire year of drug screening even after the trial court ordered her to comply. Furthermore, mother was referred for a psychiatric evaluation and she did not complete the evaluation. Mother did participate in supervised visitation and it appeared that the children had a bond with mother. Carrington summarized that, apart from visitation, mother failed to complete any of the required services, she did not have any legal source of income or a suitable living arrangement.

Carrington testified that father's treatment plan included substance abuse services, random weekly drug screens, acquiring suitable housing and a legal source of income, weekly communication with the caseworker, individual therapy and parenting classes. Unlike mother, father completed parenting classes. However, like mother, father failed to comply with the random weekly drug screens. Father submitted to a drug screen in May 2014, but failed to comply with any screening after that. Despite being fully informed as to how to comply with the weekly drug screens, and despite the trial court's repeated orders to submit the screens, father failed to comply with the drug screening. In addition, in February 2015, father was referred for substance abuse and individual therapy, but he failed to complete the program. Father said that his employment interfered with the program, yet, apart from two pay stubs, father failed to provide proof of continued employment. Father reported that he was employed; however, father only provided two pay stubs to prove his employment, the last of which was submitted in April 2015. Since April 2015, father failed to provide any verification of his employment. With respect to living arrangements, at the time of the hearing, father lived in a motel with mother. Carrington admitted that a caseworker did not visit the motel, but she stated that it was not suitable housing for the children.

Carrington summarized that, while father participated in supervised visitation and appeared to have a bond with the children, neither parent rectified the substance abuse concerns that led to the adjudication. In addition, the parents did not provide proof of suitable housing. While both parents indicated that transportation was an impediment to complying with the services, both parents were offered bus tickets, which they did not use. Carrington recommended that the trial court terminate mother and father's parental rights. Neither parent benefitted from services, neither parent complied with the agency treatment plan, they did not resolve their substance abuse issues and failed to acquire suitable housing. Carrington testified that it was in the children's best interests. Both children lived together in a stable home for the past 18 months with the paternal grandparents and they needed stability and permanency. Furthermore, the grandparents were willing to adopt the children.

Mother testified on the first day of the hearing. Mother explained that she had not used drugs in a "long time." Mother testified that she was not employed and she had several mental issues including anxiety, borderline schizophrenia, and bipolar disorder. Mother admitted that the she failed to complete a psychiatric evaluation. Mother explained that, since the children were removed, she and father lived in an apartment, then a trailer, then a motel and were currently living with a friend. Mother testified that she did not complete drug screens because she did not have transportation. Mother stated that she could not utilize a bus to complete the drug screens because the bus did not go near where she was staying. Mother also testified that she did not receive a second referral for a psychiatric evaluation.

The trial court stopped mother's testimony and scheduled the hearing to resume on October 19, 2015. The trial court instructed mother that she would resume her testimony at that time and it informed both parents that they were being given a two-month opportunity to complete drug screening, provide proof of employment and get their housing settled. The trial court informed the parents that they should take advantage of this two-month window to comply with the treatment plan.

The termination hearing resumed as scheduled on October 19, 2015. Neither parent was in attendance. Counsel for mother and father informed the trial court that his clients had called him on the day of the hearing and stated that they did not have bus tickets to get to court. Both parents were aware that the hearing was scheduled that day. The circuit court indicated that it would proceed without the parents in attendance.

DHHS recalled Carrington to the stand. Carrington testified that, since the last court date, her agency had little contact with the parents. Caseworker Mason tried to set up an "FTM meeting" with no success after father explained that he would "get back with her." Carrington testified that during the previous two months, both parents were re-referred for services. Father was referred for substance abuse therapy and he was terminated from the program after he did not participate and father failed to provide proof of employment. Mother was referred for parenting classes, substance abuse, and a psychiatric evaluation, and the drug screen service remained open. Mother completed 2 of 14 parenting classes, was terminated from a substance abuse therapy program, and did not complete the required drug screening. With respect to housing, Carrington testified that the parent's housing arrangement was unknown because the parents would not contact the agency to set up a meeting. Carrington testified that the agency continued to recommend termination of parental rights and that termination was in the children's best interests. Carrington explained that the parents failed to comply with the treatment plan and that substance abuse, housing, and inability to provide long-term care remained barriers to reunification.

After hearing closing arguments, the trial court found clear and convincing evidence to terminate respondents' parental rights pursuant to MCL 712A.19b(3)(c)(i), finding that the conditions that led to the adjudication continued to exist and there was no reasonable likelihood that they would be rectified within a reasonable time considering the children's age. The trial court also found grounds for termination under subsection (3)(g) in that both parents failed to provide for the children and there was no expectation that they would within a reasonable amount of time. The trial court explained:

Mom and dad still don't have stable housing. They still don't have stable employment. They're still - - we don't know if they're using drugs or not because they're not taking drug screens. They never completed parenting classes. They were living in substandard housing before and they're in substandard housing right now.

In fact, their housing is even questionable because mother kind of vacillated as to whether she was in a motel or living with a friend.

Nothing has changed with respect to the initial basis for jurisdiction.

In addition, pursuant to (3)(g), without regard to intent, they failed to provide proper care and custody and there is no expectation that they will be able to do so within a reasonable period of time.

Even with the exhaustive referrals that have been given to the parents, they still don't have a control of their own selves, their own environment or ability to care for their children and there is no expectation they'll be able to do so.

The trial court continued and found that termination was in the children's best interests. The trial court reasoned that this was not a "poverty case," but rather involved parents who had "no business parenting" because they did not want to parent. The parents had exhaustive referrals and the Wolverine agency was available to the parents, yet the parents were unavailable to the agency and only sporadically appeared in court. Further, the trial court reasoned, guardianship was not a viable option because the children deserved the security and stability that permanency would offer. The grandparents' home was the only stable home the children had ever known, the grandparents wanted to adopt and were not too old to adopt. The trial court reasoned that the children deserved a stable relationship with parents that respondents failed to provide. The trial court concluded:

So, I have no hesitation in finding that it's in the best interests of [the children] for their parents' rights to be terminated.

They deserve a permanent mom and dad. They deserve someone who will be there for them long-term and not based upon someone's ability to get on a bus alone or to get a bus ticket because they don't have the ability to do that or to screen around their schedule.

They deserve clean, sober parents who will plan for them long-term.

The trial court entered a written order terminating respondents' parental rights on October 21, 2015. These appeals then ensued.

## B. ANALYSIS

## I. STATUTORY GROUNDS FOR TERMINATION

-6-

On appeal, both respondents argue that the circuit court erred in finding statutory grounds for termination. A trial court's conclusion that there exists a statutory basis to terminate a respondent's parental rights is reviewed for clear error. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed." *In re Campbell*, 170 Mich App 243, 253-254; 428 NW2d 347 (1988). In making that determination, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989); see also MCR 2.613(C).

A trial court's grounds for terminating parental rights under MCL 712A.19b must be established by clear and convincing evidence. *In re McIntyre*, 192 Mich App 47, 50; 480 NW2d 293 (1991). The circuit court found grounds for termination under MCL 712A.19b(3)(c)(*i*) and (g), which provide that termination is appropriate in relevant part as follows:

> (c) [] 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> * * *

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

In this case, substance abuse and failure to provide proper care and custody were the conditions that led to the adjudication. The adjudication occurred on January 30, 2014. The trial court terminated respondents' parental rights on October 19, 2015, more than 182 days later. Although the parents had over 21 months to rectify their issues, there was clear and convincing evidence that the conditions that led to the adjudication continued to exist and there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the children's ages. MCL 712A.19b(3)(c)(*i*). There was also clear and convincing evidence that both parents failed to provide proper care or custody for the children and there was no reasonable expectation that the parents would be able to provide proper care and custody within a reasonable amount of time. MCL 712A.19b(3)(g).

From the outset, mother failed to comply with her treatment plan. Mother completed an inpatient substance abuse treatment program, but she failed to complete the outpatient portion of the program. Although she was offered bus tickets for transportation, mother stated that she did not complete the program because the treatment center did not contact her to see if she had transportation. Furthermore, mother did not submit to any of the required weekly drug screens; despite the court's repeated orders, mother missed over 21 months of required weekly drug

screens. Mother did not provide proof that she had any legitimate reason for her non-compliance. Carrington testified that both parents were fully informed about how to complete the drug screens and both parents were offered bus passes to assist with transportation to the screening locations. Despite this, mother never submitted a single drug screen.

Additionally, mother was terminated from parenting classes after two separate referrals and on the final day of trial, she had only completed 2 of 14 classes on a third referral. Mother also failed to complete a required psychiatric evaluation, she did not have a legal source of income, and she did not have suitable housing for the children. Specifically, during the pendency of the proceeding, mother lived in an apartment, a trailer, a motel and then with a friend. Carrington testified that mother would not be able to provide long-term care for the children. Neither mother nor father cooperated with Burrell when the caseworker tried to arrange a home visit. Finally, while mother participated in visitation and had a bond with the children, she missed several court hearings, including the second day of trial despite having been advised of the date. Neither mother nor father called to request bus passes or arrange transportation until the second day of the trial.

Similarly, while father participated in visitations, had a bond with the children, and completed parenting classes, father otherwise wholly failed to comply with the court-ordered treatment plan. Initially, father submitted three drug screens as required, but he last submitted a drug screen in May 2014. After that, father did not submit to any of the mandatory weekly drug screens. Thus, he missed 17 months—or 68 weeks—of the court-ordered drug screening. Father's noncompliance occurred even after repeated warnings from the trial court that compliance with the drug screening was a necessary prerequisite to reunification. Moreover, father did not have any legitimate reason for his failure to comply with the drug screening. Carrington testified that both father and mother were fully informed as to how to complete the drug screens and both parents were offered bus passes to assist with transportation, which they did not utilize. Nevertheless, like mother, father wholly failed to submit to the drug screens and he failed to provide proof from a physician regarding his prescribed medications. Furthermore, despite father's assertion that his employment interfered with the drug screening, when the trial court order him to provide proof, he failed to do so. Indeed, father only submitted two paycheck stubs—the last of which he submitted in April 2015—during the pendency of the proceeding, a period of over 21 months. Thus, there was no record evidence to support that father could not comply with the drug screens and there was no evidence to support that father had a legal source of income to provide the basic necessities for the children including suitable housing. With respect to housing, like mother, father failed to provide proof that he had obtained suitable housing. During the proceeding, mother and father lived in an apartment, a trailer home, a motel and then with a friend. The record shows that he did not cooperate with Burrell when the caseworker attempted to arrange a home visit. Instead, father "brushed off" the caseworker.

Even after having been provided a two-month opportunity to comply with the treatment plan after the first trial date, neither parent took advantage of that opportunity, evincing that there was no reasonable likelihood that the parents would overcome the hurdles that led to the initial adjudication. Specifically, Carrington testified that both parents were re-referred for services. Father was referred for substance abuse therapy and he was terminated from the program for non-attendance. Father did not provide proof that his employment interfered with the program and he did not otherwise provide proof that he had a legal source of income. Mother was

referred for parenting classes, but had only completed 2 of 14 classes, and was terminated from an outpatient substance abuse program. Neither parent submitted any drug screens during the two-month hiatus during the trial. Furthermore, when Martin, the caseworker, contacted father to arrange a family meeting, father stated that he would "get back with her," but he never did. Moreover, neither parent provided proof of a suitable living arrangement and it was unclear where they were living on the final day of trial because neither parent appeared in court.

Appellants argue that termination was improper considering that there were five caseworkers that worked on the case during the proceeding. These arguments lack merit. Certainly, a parent must be afforded a meaningful opportunity to participate in services before a court may terminate parental rights. *In re Mason*, 486 Mich 142, 156-160; 782 NW2d 747 (2010). However, "[w]hile the DHHS has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

In this case, although it was not ideal to have multiple caseworkers assigned to this case, respondents had a meaningful opportunity to participate in services, yet they failed to do so. Specifically, both parents had multiple referrals for services. Mother was referred to parenting classes three separate occasions even though she was terminated from the first two classes. Similarly, both parents were afforded multiple referrals to substance abuse and individual therapy and neither parent participated in those services. Furthermore, both parents were advised as to how to complete drug screening and neither parent participated in the screening process. In short, both parents had a meaningful opportunity to participate in services.

Respondents note that placement with a relative should weigh against termination. However, while parents can provide proper care and custody for a child by utilizing the assistance and support of a family, *In re Mason*, 486 Mich at 169, in this case, neither parent relied on the paternal grandparents to provide proper care and custody; rather, CPS placed the children with the grandparents after respondents neglected to provide proper care and custody for the children. Moreover, the record did not support that the parents could provide proper care and custody for the children even with the assistance of grandparents considering that neither parent had overcome substance abuse or obtained suitable employment and housing.

In sum, the record shows that after more than 21 months the parents did not benefit from services, and neither parent complied with the court-ordered treatment plan; they failed to address their substance abuse issues, failed to provide proof of legal income and failed to submit proof of a suitable living arrangement. This is precisely the finding made by the trial court when it found there was clear and convincing evidence that the conditions that led to the adjudication continued to exist and there was no reasonable likelihood that the conditions would be rectified within a reasonable amount of time considering the children's ages. MCL 712A.19b(3)(c)(*i*). We concur in those findings. Additionally, and for some of the same reasons, there was clear and convincing evidence that the parents failed to provide proper care or custody and there was no reasonable expectation that either parent would be able to provide such care and custody within a reasonable amount of time. MCL 712A.19b(3)(g). Accordingly, the trial court did not clearly err in terminating father and mother's parental rights. *In re Olive/Metts Minors*, 297 Mich App at 40.

## II. BEST INTERESTS

Next, respondents argue that the court erred in concluding that termination was in the children's best interests. We review for clear error a trial court's conclusion that terminating a respondent's parental rights is in the child's best interests. *In re Olive/Metts Minors*, 297 Mich App at 40.

If the trial court determines that clear and convincing evidence supports a statutory basis for the termination of parental rights, "it shall order termination of parental rights if it finds 'that termination of parental rights is in the child's best interests[.]'" *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009), quoting MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (internal quotation marks and citation omitted).]

In this case, the trial court did not clearly err in finding that termination was in the children's best interests. Here, when the children were removed, they were found living in an apartment with multiple other adult individuals with no running water and no heat. The children did not have beds, their parents abused drugs, and a violent physical altercation occurred in their presence. Nearly two years after their removal, neither parent had addressed the issues that give rise to the adjudication. In particular, neither parent took the steps required by the trial court to adequately address their substance abuse. Neither parent submitted to the mandatory drug screening and they both failed to complete their outpatient substance abuse treatment programs after being referred on more than one occasion. Similarly, neither parent obtained suitable housing after 21 months. Instead, the record shows that both parents had difficulty meeting their own needs and addressing their own problems. Nothing in the record supported that they would be able to provide appropriate care and support for the children within a reasonable amount of time. Instead, after nearly two years of services, the parents were no closer to rectifying the conditions that led to the adjudication. Indeed, over the course of the proceedings, both parents put forth only minimal effort to comply with the treatment plan despite having been warned by the court that full compliance was a prerequisite to reunification with the children. Respondents' lack of effort and involvement was perhaps best illustrated when they waited until the second day of trial to contact their counsel to inform him that they did not have transportation to the courthouse despite having been advised of the date of the trial two months in advance. In short, respondents lack of effort to comply with the treatment program and minimal involvement in the effort to reunify with the children illustrated that they were not ready, willing or able to provide proper care and custody for the children.

In contrast, the trial court correctly found that the grandparent's provided a safe, secure and stable environment for the children. Their home was the only stable home that the children had experienced and the children began to have stability after living 21 months with the grandparents. The grandparents wanted to adopted the children and they were capable of providing the stability and permanency that the children needed. In short, the trial court did not clearly err in finding that termination was in the best interests of the children. *In re Olive/Metts Minors*, 297 Mich App at 40.

Affirmed.


/s/ William B. Murphy
/s/ Henry William Saad
/s/ Stephen L. Borrello